758 So.2d 124 (2000)
Michelle O'REGAN and Ryan O'Regan
v.
PREFERRED ENTERPRISES, INC. d/b/a Number One Cleaners, et al.
No. 98-CC-1602.
Supreme Court of Louisiana.
March 17, 2000.
*126 Christine S. Tenley, John J. Hainkel, III, Frilot, Partridge, Kohnke & Clements, New Orleans, Counsel for Applicant.
George Brian Recile, Chehardy, Sherman, Ellis, Breslin & Murray, Metairie; Jonathan Beauregard Andry, Andry & Andry, New Orleans; Gary Mark Zwain, Duplass, Zwain & Bourgeois, Metairie; Dominic Joseph Gianna, Marshall Joseph Simien, Jr., Middleberg, Riddle & Gianna, New Orleans; Stephen Nolan Elliott, Bernard, Cassisa & Elliott, Metairie; Robert Edward Barkley, Jr., Nicholas Dale Doucet, Barkley & Thompson, New Orleans; David B. Bartel, Michael L. Zaleski, Quarles & Brady, Counsel for Respondent.

ON REHEARING
KNOLL, Justice.[*]
At issue before us is the question of whether an employee who has a disease presumed to be non-occupational under LA. REV. STAT. 23:1031.1(D)[1] is barred *127 from pursuing a remedy in tort against her former employer by the exclusivity of rights and remedies provision recognized in LA. REV. STAT. 23:1031.1(H).[2] Finding that the presumption of non-occupational disease excludes plaintiff from the remedies available under the Louisiana Workers' Compensation Act, we affirm this State's longstanding jurisprudence that when there is no remedy, there is no immunity in tort for the employer. Boyer v. Crescent Paper Box Factory, 143 La. 368, 78 So. 596 (1917).

FACTS AND PROCEDURAL HISTORY
Preferred Enterprises, d/b/a Number One Cleaners, (Preferred) employed Michelle O'Regan (O'Regan) from July 1990 through November 1990. O'Regan worked at the counter and plied a chemical (methoxyethanol) with her bare hands into the clothing to remove spots. In 1993, after she left the employ of Preferred, O'Regan was medically treated for sinus problems and was diagnosed with severe anemia. She was diagnosed as suffering from myelodysplasia, a form of aplastic anemia which causes the bone marrow to produce abnormal cells.[3] The disease can take many years to manifest itself and exposure to toxic chemicals can cause the disease.
In a worker's compensation action against Preferred, O'Regan contended that she was exposed to a chemical during her four-month employment at Preferred and that as a result of her exposure she contracted myelodysplasia. Originally, a hearing officer denied O'Regan workers' compensation benefits, finding that O'Regan did not meet her burden of proving her claim by an "overwhelming preponderance of the evidence," and thus failed to overcome the statutory presumption that the disease was "non-occupational and not to have been contracted in the course of and arising out of [her] employment." The hearing officer properly determined that O'Regan was held to this higher burden of proof because she had to overcome the presumption required by LA. REV. STAT. 23:1031.1(D), because she was employed by Preferred for less than twelve months. The Court of Appeal, Fifth Circuit, affirmed the hearing officer's determination. O'Regan v. Number One Cleaners, 96-769 (La.App. 5 Cir. 2/12/97), 690 So.2d 103.[4]
O'Regan next pursued a timely filed tort suit against Preferred alleging negligence and intentional misconduct.[5] Preferred *128 answered the petition with a general denial and further urged that O'Regan failed to state a cause of action because her exclusive remedy was in workers' compensation. Thereafter, Preferred filed a motion for summary judgment on the negligence claims, urging that plaintiffs sole remedy was limited to a workers' compensation action.
After the trial court denied Preferred's motion for summary judgment, Preferred perfected a supervisory writ to the Court of Appeal, Fifth Circuit. The appellate court summarily denied the writ, stating that "[o]n the showing made we find no error in the trial court's ruling." After Preferred filed a writ application with this court, we remanded the case to the appellate court for briefing, argument, and an opinion. O'Regan v. Preferred Enters., Inc., 98-0060 (La.3/13/98), 712 So.2d 861.
On remand, the appellate court affirmed the ruling of the trial court, finding that Preferred's tort immunity was inapplicable because O'Regan's injury did not fit into the workers' compensation scheme. We granted Preferred's writ application to resolve this issue: Whether an employee who has suffered a disease presumed to be non-occupational under LA. REV. STAT. 23:1031.1(D) is entitled to sue her employer in tort. O'Regan v. Preferred Enters., Inc., 98-1602 (La.10/30/98), 723 So.2d 965. For the following reasons, we affirm.

ANALYSIS
In essence, we are called upon in this suit to construe LA. REV. STAT. 23:1031.1(D), supra n. 1, in the context of the Workers' Compensation Act. Accordingly, it is appropriate for us to review the general rules of statutory interpretation and to recall what we have specifically stated regarding the interpretation of the Workers' Compensation Act.
Legislation is a solemn expression of legislative will; therefore, interpretation of a law is primarily the search for the Legislature's intent. LA. CIV. CODE art. 2; Cat's Meow v. City of New Orleans, 98-0601 (La.10/20/98), 720 So.2d 1186, 1198. The starting point for interpretation of any statute is the language of the statute itself. Touchard v. Williams, 617 So.2d 885 (La. 1993). When a law is clear and unambiguous and its application does not lead to absurd consequences, the law is applied as written, and no further interpretation may be made in search of legislative intent. LA. CIV. CODE art. 9. However, when the language of a law is susceptible to different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the meaning of ambiguous words must be sought by examining the context in which they occur and the text of the law as a whole. LA. CIV. CODE art. 10. In addition, laws on the same subject matter must be interpreted in reference to each other. LA. CIV. CODE art. 13.
Furthermore, as we have cautioned before, when interpreting the Workers' Compensation Act, courts must take into account the basic history and policy of the compensation movement. Roberts v. Sewerage & Water Bd. of New Orleans, 92-2048 (La.3/21/94), 634 So.2d 341, 345.

Overview of the Workers' Compensation Act
In interpreting the statute at issue, it is likewise appropriate for us to observe Atchison v. May, 201 La. 1003, 10 So.2d 785, 788 (1942), wherein Justice McCaleb, commenting on the Workers' Compensation Act, stated:
The act, which is social legislation, was passed for the joint benefit of labor and management in order to insure that employees who became disabled as a result of their labors in hazardous industries would have, during the period of their disability, a weekly income for the upkeep of themselves and their families. It was also deemed advisable to provide for compensation, in cases of death, to the persons dependent upon the employee for support so that these persons *129 would not be entirely bereft of funds during the period of time following the employee's death when they, of necessity, were compelled to reconstruct their lives and seek a means of support,thus avoiding the possibility that these persons would become public charges. In order that this end might be accomplished, the Legislature provided for sacrifices to be made by both the employer and the employee. The employee was required to waive the right granted him under the general law, Article 2315 of the Civil Code, in consideration of receiving a fixed percentage of his wages during the period of his disability. The employer, on the other hand, was deprived of the defenses afforded to him by the general law and he was assured that, in case any of his employees were injured, they would be entitled to no more than the amount stipulated in the statute as compensation during the period of disability.

History of Occupational Diseases under the Workers' Compensation Act
It is noteworthy that although 1914 La. Acts 20 introduced Louisiana to a system which addressed the claims of injured workers free from tort analysis, it was not until 1952 that the Legislature established statutory authority allowing for the coverage of occupational diseases under Louisiana's workers' compensation law. With the passage of 1952 La. Acts 532, every employee who was "disabled because of the contraction of an occupational disease" was entitled to workers' compensation "the same as if said employee received personal injury by accident arising out of and in the course of his employment." The statute provided a definition of an "occupational disease," which stated, in pertinent part, that "[a]n occupational disease shall include only those diseases hereinafter listed when contracted by an employee in the course of his employment as a result of the nature of the work performed." LA. REV. STAT. 23:1031.1(A) (1952). This exclusive list included diseases caused by contact with specific substances, namely the diseases of contact poisoning from enumerated sources, asbestosis, silicosis, dermatosis, and pneumoconiosis. LA. REV. STAT. 23:1031.1(A) (1952). Coverage was also provided for diseased conditions caused by exposure to X rays or radioactive substances. Subsequently, in 1958 La. Acts 39 the Legislature added tuberculosis as one of the specified occupational diseases, if it was "contracted during the course of employment by an employee of a hospital or unit thereof specializing in the care and treatment of tuberculosis patients." LA. REV. STAT. 23:1031.1(A) (1958). It was further stated in Paragraph F of 1952 La. Acts 532 and 1958 La. Acts 39 that the rights and remedies granted to an employee for occupational diseases for which "he [was] entitled to [workers'] compensation shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents or relatives."
It was with the enactment of the 1952 legislation that the Legislature also made provision for occupational diseases contracted by employees who had worked for the employer for less than twelve months. That provision, enacted as LA. REV. STAT. 23:1031.1(B) of 1952 La. Acts 532,[6] survives today without any change as LA. REV. STAT. 23:1031.1(D), the statute which is the core of our present discussion. That statute reads as follows:
Any occupational disease as herein listed contracted by an employee while performing work for a particular employer in which he has been engaged for less than twelve months shall be presumed to be non-occupational and not to have been contracted in the course of and arising out of such employment, provided, however, that any such occupational disease so contracted within the twelve months' limitation as set out herein shall become compensable *130 when the occupational disease shall have been proved to have been contracted during the course of the prior twelve months' employment by an overwhelming preponderance of evidence. (emphasis added)[7]
Initially, we recall this legislative history because it highlights and helps us resolve an issue regarding a seeming anomaly caused by the 1975 amendment to other portions of LA. REV. STAT. 23:1031.1. As LA. REV. STAT. 23:1031.1(D) is worded, the employee's heightened burden of proof is applicable only to those occupational diseases "as herein listed."
Although the 1952 and 1958 enactments listed specific occupational diseases, 1975 La. Acts 583 revised LA. REV. STAT. 23:1031.1(A) to amend the definition of occupational disease by removing the list of specific diseases for which there was coverage under workers' compensation and substituted the following:
An occupational disease shall mean only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease.[8]
No changes were made to LA. REV. STAT. 23:1031.1(D) at that time. As a result, it is evident that the non-occupational presumption was retained for an exclusive list of specific diseases which no longer exists. Thus, before we reach the core question before us, we must ascertain what occupational diseases the non-occupational presumption affects.[9]
It is well-recognized and a long-established rule of statutory construction that a statute should be interpreted as a whole to effect the legislative intent and should be construed in such way as to reconcile, if possible, apparent inconsistencies so that each part is given effect. State v. Cazes, 262 La. 202, 263 So.2d 8, 12 (1972). Thus, in Fruge v. Muffoletto, 242 La. 569, 137 So.2d 336, 339 (1962), we said:
In construing a statute, the primary object is to ascertain and, if possible, give effect to the intention and purpose of the legislature as expressed in the statute. Since the meaning is to be determined from a general consideration of the act as a whole, all parts, provisions or sections must be read together; each must be considered with respect to, or in the light of, all the other provisions, and construed in harmony with the whole. The intent as deduced from the whole will prevail over that of a particular part considered separately. Meaning should be given, if possible, to each and every section, and the construction placed on one portion should not be such as to obliterate another; so, in determining the meaning of a word, phrase or clause, the entire statute is to be considered.
Utilizing this rule of statutory construction, it is clear that LA. REV. STAT. *131 23:1031.1(D) cannot be restricted to the list of occupational diseases originally provided in the 1952 and 1958 enactments, because such a narrow construction of this provision would result in its nullification. Rather, it is clear that the Legislature's substantive revision of the definition of an occupational disease, which eliminated the list of specified diseases, is a clear indication that it made a fresh start with respect to this definition. Accordingly, we conclude that LA. REV. STAT. 23:1031.1(D) should be interpreted so that it has continued meaning and applicability. Therefore, we hold that LA. REV. STAT. 23:1031.1(D) must be read with reference to the broader definition of "occupational disease" enacted in the 1975 revision of LA. REV. STAT. 23:1031.1(A), and that its non-occupational presumption and heightened burden of proof are applied to those diseases which fit that revised definition. Having addressed this preliminary matter, we now turn to the question which prompted us to grant this writ.

Impact of LA. REV. STAT. 23:1031.1(D)
Under the broad concept of workers' compensation, the employer is responsible for compensation benefits to "an employee not otherwise eliminated from the benefits of this Chapter [who] receives personal injury by accident arising out of [the employment] and in the course of his employment." LA. REV. STAT. 23:1031(A) (emphasis added).[10] We have highlighted the words, "accident arising out of and in the course of his employment" because they are terms of art in the context of the Workers' Compensation Act.[11] Words of art and technical terms "must be given their technical meaning when the law involves a technical matter." LA. CIV. CODE art. 11. These phrases were carefully chosen by the Legislature and have been utilized by the courts to decide the threshold issue of whether the particular risk involved falls within the protection of the compensation act. 13 H. ALSTON JOHNSON, LOUISIANA CIVIL LAW TREATISE, WORKERS' COMPENSATION § 141 (3d. ed.1994). Succinctly stated, compensation benefits are only available if an injury results from an accident which arises out of the employment and occurs in the course of the employment. Mundy v. Department of Health & Human Resources, 593 So.2d 346, 349 (La.1992). Only in such instances *132 are workers' compensation benefits the employee's exclusive remedy against his employer. Id. Thus, we find that it is clearly evident that these phrases are the lynchpin to an injured employee's entitlement to compensation under the Workers' Compensation Act.
It is no surprise that when the Legislature broadened the concept of "accident"[12] by providing for occupational diseases in the workers' compensation system, it engrafted the same phrases in its treatment of occupational diseases in LA. REV. STAT. 23:1031.1(A) and (B). Generally, an employee who becomes disabled because of an occupational disease will be entitled to workers' compensation benefits "if said employee received personal injury by accident arising out of and in the course of his employment," LA. REV. STAT. 23:1031.1(A) (emphasis added), the employee has performed work for a particular employer in which he has been engaged for more than twelve months, LA. REV. STAT. 23:1031.1(D), and he can show by a preponderance of the evidence that the "disease or illness ... is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease," LA. REV. STAT. 23:1031.1(B).
However, if an employee becomes disabled because of an occupational disease contracted within the first twelve months of employment, the occupational disease "shall be presumed to be non-occupational and not to have been contracted in the course of and arising out of such employment." LA. REV. STAT. 23:1031.1(D) (emphasis added). It is only if an employee can show by an overwhelming preponderance of evidence that the occupational disease was contracted within the twelve months' limitation and that it fits the definition of occupational disease as provided in LA. REV. STAT. 23:1031.1(B) that the occupational disease "shall become compensable." LA. REV. STAT. 23:1031.1(D) (emphasis added); see Dibler v. Highland Clinic, 27,274 (La.App. 2 Cir. 9/27/95), 661 So.2d 588.
This analysis makes two points very clear. First, although the Workers' Compensation Act provides coverage for occupational diseases pursuant to LA. REV. STAT. 23:1031.1(A), LA. REV. STAT. 23:1031.1(D) creates a category of employees who are "otherwise eliminated from the benefits of this Chapter," LA. REV. STAT. 23:1031(A), by virtue of their employment for less than a year. This elimination is created by virtue of the legislatively crafted presumption that in such an instance the disease is non-occupational and presumed "not to have been contracted in the course of and arising out of such employment." The statute further provides that it only "become[s] compensable" if a heightened burden of proof is reached. LA. REV. STAT. 23:1031.1(D). Simply stated, by virtue of the presumption that is operative because of the Legislature's creation of the temporal requirement, such disease has been identified as a risk that falls outside the protection of the compensation act. In this regard, we find that the Legislature has not only imposed a higher burden of proof, it has created a category which presumptively eliminates certain employees from workers' compensation benefits. Cf. LA. REV. STAT. 23:1021(7)(b) (mental injury caused by *133 mental stress), LA. REV. STAT. 23:1021(7)(c) (mental injury caused by physical injury), and LA. REV. STAT. 23:1021(7)(e) (heart-related or perivascular injuries) for examples of a legislatively crafted higher burden of proof (clear and convincing standard) without a non-occupational presumption.[13] Second, if an employee attempts to be brought under the Act and fails to meet the heightened burden of proof, the disease remains "to be non-occupational and not to have been contracted in the course of and arising out of such employment." LA. REV. STAT. 23:1031.1(D). Such conclusion is inescapable by virtue of the presumption and the specific words that the Legislature has chosen to use in this statute. "[I]f the employee fails to demonstrate that the injury arose out of and occurred in the course of employment the Act has no applicability and he may proceed in tort." 14 H. ALSTON JOHNSON, LOUISIANA CIVIL LAW TREATISE, WORKERS' COMPENSATION § 366, at 226 (3d. ed.1994). Therefore, if such an employee has been eliminated from the benefits of the Workers' Compensation Act by virtue of the presumption, his rights and remedies on account of his disease against his employer are not restricted to compensation benefits as provided in LA. REV. STAT. 23:1031.1(H) because he is not entitled to the protection of the compensation act as a direct result of the operation of LA. REV. STAT. 23:1031.1(D).
O'Regan attempted to fall under the workers' compensation scheme, but her claim was easily defeated because she could not meet the heavy burden of proof and thus was unable to overcome the legislatively created presumption against her. As noted in Johnson's commentary on workers' compensation:
[T]he primary concern of the Act is to assure that employment-rooted injuries and diseases are compensated, and equally that injuries and diseases not rooted in employment be excluded from coverage. Seen in this light, the occupation disease section is essentially concerned with the claimant's proof that there is a relationship between the employment and his disease, to the extent that we think it is fair that the employment enterprise should bear the cost of his disability.
13 H. ALSTON JOHNSON, LOUISIANA CIVIL LAW TREATISE, WORKERS' COMPENSATION § 220, at 516 (3d. ed.1994). In order to reach this objective, the Legislature has intentionally adopted the temporal presumption of LA. REV. STAT. 23:1031.1(D) and has assigned a particularly stringent burden of proof to overcome it.[14] Significantly, other workers' compensation injuries are covered under the no-fault quid pro quo by a claimant's showing that injuries occurred more probably than not. There is no temporal element that must be satisfied before benefits enure to the laborer; he could be injured within the first five minutes of employment and be as fully covered as one who had been employed for thirty years. Thus, it is that the temporal presumption of LA. REV. STAT. 23:1031.1(D) stands alone in the workers' compensation scheme.
*134 LA. CONST. art. 1, § 22 inscribes in our Constitution that "[a]ll courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights." Nonetheless, it has long been the jurisprudence of this Court that the Legislature has the authority to limit codal remedies as long as it does not leave the injured party entirely without a remedy.[15]See, e.g., Colorado v. Johnson Iron Works, 146 La. 68, 83 So. 381 (1919). A fortiori, the Legislature cannot completely deprive citizens of the right to seek a remedy either under the Act or under our general law. The defendant's argument that the Act provides the exclusive coverage for occupational diseases is misplaced with respect to LA. REV. STAT. 23:1031.1(H). Although the Act provides coverage for occupational diseases, it does not provide the exclusive remedy if the work-related disease falls outside the basic coverage of the Act. The Act does not and cannot foreclose all types of civil actions between employers and employees. Rather, the exclusivity provisions of the Act preclude only those civil tort actions premised upon the fault of the employer vis-a-vis the employee for workplace injuries compensable under the Act. A compensable injury under the Act is one contracted in the course of and arising out of the employment and for which the injured employee is entitled to receive compensation. LA. REV. STAT. 23:1031.1(D).
The exclusive remedy provision refers only to injuries for which the employee or his dependent is entitled to be compensated, and the Act becomes the exclusive remedy for employees against their employers only for such diseases. See LA. REV. STAT. 23:1031.1(H). Accordingly, injuries non-compensable under the Act by LA. REV. STAT. 23:1031.1(D) are also excluded from the shield against tort liability provided to employers by the exclusivity clause in LA. REV. STAT. 23:1031.1(H). Because O'Regan's injuries were presumptively excluded from coverage under the Act by LA. REV. STAT. 23:1031.1(D) by presuming that they were "non-occupational and not to have been contracted in the course of and arising out of" her employment, and her inability to overcome this presumption by an "overwhelming preponderance of evidence," we conclude that she is not precluded from bring a suit in tort against her employer. Simply stated, the presumption throws the employee outside of the act; therefore, the exclusivity provision of LA. REV. STAT. 23:1031.1(H) is not applicable to the employee, and the employee may proceed in tort against her employer.
The jurisprudence and those who comment on the theory of workers' compensation repeatedly emphasize that compromise is the quintessential characteristic of the workers' compensation movement. See Roberts, 634 So.2d at 344; Gagnard v. Baldridge, 612 So.2d 732, 735 (La.1993); Atchison, supra; Puchner v. Employers' Liab. Assur. Corp., 198 La. 921, 5 So.2d 288, 291 (1941); 13 H. ALSTON JOHNSON, LOUISIANA CIVIL LAW TREATISE, WORKERS' COMPENSATION § 32, at 40 (3d. ed.1994). By elevating the standard for those employed for less than twelve months and expressly presuming that the claimant's injuries are non-occupational and not to have been contracted in the course of and arising out of the employment, i.e., presuming that the injuries are not compensable under the Act, the Legislature has, in effect, withdrawn the quid pro quo between labor and industry *135 for this class of laborers.[16] When the presumption created in LA. REV. STAT. 23:1031.1(D) is applied to the facts before us, it is evident that no quid pro quo relationship between O'Regan and Preferred comes into fruition. By virtue of the presumption embodied in LA. REV. STAT. 23:1031.1(D), O'Regan remains beyond the breadth of the Workers' Compensation Act because her disease simply did not become compensable. To hold otherwise would not only allow Preferred to benefit from the stringent burden of proof that O'Regan was required to meet in order to overcome the presumption that her disease was non-occupational, but would shield it from potential tort exposure even though O'Regan's disease was not employment-related. Such result would place the plaintiff in the position of having a significant injury with no available avenue to address the damages that have befallen her. Therefore, we hold that the lower courts properly found that O'Regan's tort action could proceed against Preferred.
Our determination today is consistent with long-established judicial precedent in this State and does not introduce any new concept. In Boyer v. Crescent Paper Box Factory, 143 La. 368, 78 So. 596 (1917), it was conceded that even though the employee suffered an employment-related injury which was compensable, her tort action for the serious disfigurement she suffered as a result of that work injury was not barred by the exclusivity provisions of the Workers' Compensation Act, because the statute did not provide for disfigurement as it now does in LA. REV. STAT. 23:1221(4)(p). Under those facts this Court held that where the Act "does not provide compensation" for such an injury, there was no exclusivity. Boyer, 78 So. at 600. This principle has never been repudiated. 14 H. ALSTON JOHNSON, LOUISIANA CIVIL LAW TREATISE, WORKERS' COMPENSATION § 366, at 227 (3d. ed.1994).
Not only has the Boyer principle not been repudiated, it has served as the underpinning for decisions in the area of occupational diseases prior to their coverage under the Workers' Compensation Act in 1952. In Clark, 200 So. at 489, and Faulkner, 154 So. at 507, the Act was held to be not exclusive because no compensation was then available for occupational diseases. See also Spillman v. South Cent. Bell Tel. Co., 518 So.2d 994 (La. 1988); Connor v. Naylor Indus. Serv., 579 So.2d 1226 (La.App. 3 Cir.), writ denied, 585 So.2d 568 (La.1991). The same reasoning is applicable in the present case because LA. REV. STAT. 23:1031.1(D) provides that O'Regan is presumptively not covered under the Act and she was unable to bring herself within the provisions of the Act.
In addition, the result we reach today is consistent with that of our common-law sister states. All states are unanimous in that the compensation remedy is exclusive of all other remedies by the employee if the injury falls within the coverage formula of the workers' compensation act. If the injury does not, however, then states are also unanimous that the compensation act does not disturb any existing remedy, *136 i.e., one's right to sue for damages in tort, because no quid pro quo has taken place where they have actually provided no compensation liability. See LARSON'S WORKERS' COMPENSATION LAW, §§ 100.01[1] & 100.01[4], at 100-2 & 100-8 (1999).
The Workers' Compensation Act provides basic coverage for injuries sustained in the course of employment. The Act was a compromise between labor and industry pursuant to which laborers received guaranteed no-fault recovery and industry was relieved of the possibility of large damage awards in the tort system. That is, the employer agreed to pay on some claims for which there might have been no liability in exchange for the limited liability, and the employee agreed to give up available tort actions and remedies in exchange for sure and certain relief under the Act. This quid pro quo between employers and employees is central to the Act. Thus, it is a fundamental principle that the employee must have the possibility of recovery under the Act for this compromise to hold and for the scope of immunity from tort liability granted by the exclusivity provisions to hold. Barring a tort action without providing a substitute remedy under the Act would abrogate the quid pro quo compromise between the employee and the employer. The exclusivity provisions of the Act are part of the compromise.
Professor Larson, long an authoritative scholar on workers' compensation, explains:
If ... the exclusiveness defense is a "part of the quid pro quo by which the sacrifices and gains of employees and employers are to some extent put in balance," it ought logically to follow that the employer should be spared damage liability only when compensation liability has actually been provided in its place, or, to state the matter from the employee's point of view, rights of action for damages should not be deemed taken away except when something of value has been put in their place.
LARSON'S, § 100.04, at 100-22.
It is a fundamental principle that the Act does not contemplate that an employee's rights and remedies can be abolished without providing a substitute. Thus, for example, under our former occupational disease act which provided a scheduled list of compensable diseases, employees allegedly suffering from diseases not among the listed diseases were not barred from bringing an action under the general law by the act's exclusive remedy provisions because such diseases were not within the purview of the act. See, e.g., Samson v. Southern Bell Tel. & Tel. Co., 205 So.2d 496, 500 (La.App. 1 Cir.1967) (holding that the employee could sue the employer in tort where the act provided no remedy for work-connected mental breakdowns). The same result has likewise been logically concluded by other jurisdictions facing the same issue. See, e.g., Schwartz v. Queensboro Farm Prods., Inc., 191 Misc. 778, 78 N.Y.S.2d 863 (Sup.Ct.1948) (holding that an employment caused disease which was neither occupational nor accidental could be grounds for a tort suit); Boniecke v. McGraw-Edison Co., 485 Pa. 163, 401 A.2d 345 (1979) (holding that where the employee had been denied coverage under the state's Occupational Disease Act and where the employer contended that the act barred the employee's common-law action and provided full coverage, the lower courts had not erred in refusing to grant the employer's motion for summary judgment because nothing in the record indicated that the employee's diseases were compensable under the act); McCarthy v. Department of Soc. & Health Servs., 110 Wash.2d 812, 759 P.2d 351 (1988) (holding that if an employee's disease was not an occupational disease under the act, then she could pursue a common-law action against her employer); Niles v. Marine Colloids, Inc., 249 A.2d 277 (Me.1969) (holding that the exclusiveness provision of the compensation act was not applicable because pulmonary emphysema was neither an accidental injury nor a listed occupational *137 disease).[17]
If the claimant must qualify under the Act, as one must under LA. REV. STAT. 23:1031.1(D), or is given the option to qualify, see, e.g., LA. REV. STAT. 23:1035 (providing that certain bona fide officers of corporations, certain partners in partnerships, certain members in a limited liability company, or certain sole proprietors of a sole proprietorship may elect by written agreement not to be covered by the Act), the claimant will not be barred by the exclusivity provisions of the Act unless he actually qualifies. That is, the possibility of qualifying under the Act does not itself bar one's rights and remedies under the general law. See, e.g., Latimer v. Western Mach. Exch., 42 Wash.2d 756, 259 P.2d 623 (1953). A conceptual distinction must be made between injuries which do not come within the Act's coverage provisions and injuries which are covered, but for which no compensation is payable. The former class includes cases in which there was no "injury by accident arising out of and in the course of the employment." LARSON'S, § 100.04, at 100-22;[18]see also LA. REV. STAT. 23:1031.1(D) (providing that in circumstances where an employee contracts an occupational disease but has been employed for less than twelve months, the disease is presumed to be non-occupational and not to have been contracted in the course of and arising out of his employment).
Thus, for example, in McClendon v. Mid-City Discount Drugs, Inc., 876 S.W.2d 657 (Mo.Ct.App.1994), the court was faced with the issue of whether a spouse of a decedent was precluded from suing the employer in tort for the death of her husband who had been killed when he fell down the stairs at work while intoxicated. The court noted that the Workers' Compensation Law provides the exclusive remedy to employees only for accidents arising out of and in the course of employment. Id. at 658 (citing Gaines v. Monsanto Co., 655 S.W.2d 568, 570 (Mo.Ct.App. 1983)). The court distinguished, however, that "[i]if an employee's death or injury results from an incident which did not occur within the course of employment, the death or injury is not within the exclusive realm of the Workers' Compensation Law, and any possible common law action is unaffected. The Workers' Compensation Law supplants an employee's common law rights only when the death or injury is within the course of employment." Id. (citing State ex rel. McDonnell Douglas Corp. v. Ryan, 745 S.W.2d 152, 153 (Mo. 1988) (en banc)). Thus, the court held that the exclusivity provision of the act did not bar a tort suit against the employer in that case. It reasoned that injuries received while an employee is too intoxicated to work are not compensable, thus placing the employee's injuries beyond the scope of the act as they did not arise from the employment. See also Kleinhesselink v. Chevron U.S.A., 277 Mont. 158, 920 P.2d 108 (1996) (holding an employee's commonlaw tort action could be barred only if his injuries were compensable under the Workers' Compensation Act); Stratemeyer v. Lincoln County, 276 Mont. 67, 915 P.2d 175 (1996) (holding that the Workers' Compensation Act's exclusivity provision did not bar a tort suit for mental disability *138 because that injury was excluded from the compensation statute); Errand v. Cascade Steel Rolling Mills Inc., 320 Or. 509, 888 P.2d 544 (1995) (holding that, where an employee filed for compensation but was denied because he failed to prove the compensability of his condition and then sued in tort, the exclusivity provision of the act did not apply because it applied only to compensable injuries, although the claimant's injuries arose out of and in the course of his employment).
We must also distinguish these cases from cases where a covered claim fails because the employee does not meet his burden of proof as to a component of his case other than for basic coverage of the Act. See LARSON'S, § 100.05[3][d] at 100-37. Thus, for example, in Decius v. Marriott Corp., 402 A.2d 841 (D.C.App. 1979), the employee was injured when struck by a fellow employee while on lunch break. The employee sought, but was denied workers' compensation. The employee then sued in tort. The court held that the Workers Compensation Act's exclusive remedy provision barred the tort suit. The court reasoned that the employee had a common-law remedy only if the act had not covered his claim. The court also reasoned that while the employee's injuries were compensable under the act, the employee's compensation claim was denied because they arose from his own wilful misconduct, i.e., he provoked the altercation. Thus, the act provided basic coverage to the employee, but he failed to prove that his injuries were "accidental." This is factually distinguishable from the scenario in O'Regan. Here, the plaintiff's claim has been held to not be covered under the Act by the Workers' Compensation hearing officer and the Louisiana Fifth Circuit Court of Appeal. See O'Regan v. Number One Cleaners, 96-769 (La. App 5 Cir. 2/12/97), 690 So.2d 103 (holding that the claimant failed to prove by an overwhelming preponderance of the evidence that she contracted her injuries in the course of and arising out of her employment). Her failure of proof was that of basic coverage, i.e., that the Act was applicable. The facts and circumstances are not that the Act covered her injuries but that her claim was denied due to her failure to prove some element of her claim because LA. REV. STAT. 23:1031.1(D) presumes her claim is non-occupational and not contracted during her employment. Thus, the Act itself presumed that the claim was not covered. If the claim is not covered under the Act, then the exclusivity provision does not apply. There has been no quid pro quo and thus the claimant has not lost her right to sue in tort. Further, there is no "two bites at the apple" problem here because that concept is intended to prevent double recovery. As the previous suit held that plaintiffs injuries were non-compensable under the Act, it cannot now be said that she is having a second bite. The Workers' Compensation Act was designed to serve as a substitute for an employee's right to sue in tort and to provide no-fault recovery. It was not intended to create a class of employees who had neither a right to recovery under the Act nor a right to a claim in tort. The "compensation" for which an employee or his dependent "is entitled to" under the Act is the exclusive remedy for such injuries. LA. REV. STAT. 23:1031.1(H). Thus, injured employees are not permitted to seek and recover both compensation under the Act and damages in tort.
We are mindful of the effect this decision could have in cases where employees who pursue a compensation remedy are denied benefits and subsequently seek redress in tort, or vice versa. However, an unsuccessful compensation claim does not necessarily bar a tort suit and an employee who sues unsuccessfully in tort is not necessarily barred from bringing a subsequent compensation claim. LARSON'S, § 102.03[1] and cases cited therein. The reason why such a course of conduct does not bar subsequent suits is that the "election of a remedy which proves to be nonexistent is no election at all." LARSON'S, *139 § 102.03[1], at 102-18. That is, the "election of remedies" doctrine from Roman law has no place in compensation cases because it undermines the Act's fundamental policy: to provide speedy recovery to employees, without proof of fault, for accidental injuries that occur from their employment. Our holding today, however, does not mean that the employee can always seek a subsequent remedy after unsuccessfully pursuing the first. Courts should distinguish between cases which fail because the Act does not apply and cases which fail because the employee does not pursue his compensation claim adequately. In the former cases, election did not take place because there was a misconception of one right when only another in fact existed. In the latter cases, however, election is a choice between two valid but inconsistent remedies. Whether or not a subsequent action may be brought, therefore, depends on the grounds of the denial. If, for example, the employee pursues a compensation claim but that claim is denied on the grounds that the injury is not compensable under the Act, then the claimant may maintain an action in tort. If, however, the compensation claim is denied not because it is not covered under the Act but because the employee failed to prove an element of the claim (other than for basic coverage), then the claimant is precluded from bringing a subsequent suit in tort on the same allegations.
In determining whether a subsequent remedy is barred, courts should consider whether the claimant was successful[19] in his former compensation or damage remedy. This is because to do such will effectuate the purpose of workers' compensation: to provide employees a security system. The Act was not intended to give the employer a windfall and relieve him of all responsibility toward injured employees. Likewise, it was not intended to work as a gamble, where the result is a complete win for one side and total loss for the other. The injured employee should not be forced to gamble with his rights "under the guise of enforcing a supposed penalty against the employer." LARSON'S, § 102.03[1], at 102-19; cf. James v. Caterpillar Inc., 242 Ill.App.3d 538, 183 Ill.Dec. 242, 611 N.E.2d 95 (3d Dist.) (holding that an employee who files a claim under the Workers' Compensation Act and receives compensation under the Act, whether by an award or settlement, is barred from bringing a subsequent tort claim by the Act's exclusivity provision), appeal denied, 151 Ill.2d 564, 186 Ill.Dec. 382, 616 N.E.2d 335 (1993) with Western Waste Indus. v. Purifoy, 326 Ark. 256, 930 S.W.2d 348 (1996) (holding that the court lacked jurisdiction over a subsequently filed civil suit because the employee had previously settled her compensation claim for the same injuries). The underlying circumstance in cases allowing the employee to pursue an action in tort against his employer is that, for whatever reason, the injuries in question are not "compensable" under the Act. That is, the mutually exclusive remedies of either compensation under the Act or damages in tort depends on whether injuries are compensable under the Act. In the case sub judice, for plaintiff's injury to be "compensable" under the Act, she must prove by an overwhelming preponderance of the evidence that she contracted her injuries in the course of and arising out of her employment. Absent such proof (as has already been determined by the hearing officer and affirmed by the Fifth Circuit), plaintiffs injuries are not "compensable" under the Act, and accordingly, the Act's exclusivity provisions do not bar her bringing the present tort action.
Our holding today should not be interpreted to shift the burden from the employee to the employer. In a case such as the one sub judice, which allegedly involves injuries arising out of an employment relationship, if the employee seeks and is denied workers' compensation, the *140 employee still has the burden of proving that the compensation claim was rejected on the ground that the injury or disease was not within the exclusive coverage provisions of the Act.[20] That is, he must establish for the court that, under the facts and circumstances of the case, his particular disease or injury was not compensable under the Act. See, e.g., McCarthy v. Department of Soc. & Health Servs., 110 Wash.2d 812, 759 P.2d 351 (1988); Zurowska v. Berlin Indus., Inc., 282 Ill. App.3d 540, 217 Ill.Dec. 499, 667 N.E.2d 588 (1st Dist.1996).

DECREE
For the foregoing reasons, the judgments of the lower courts are affirmed. This case is remanded to the trial court for further proceedings consistent with this opinion.
AFFIRMED AND REMANDED.
LEMMON, J., concurs and assigns reasons.
MARCUS, VICTORY, and TRAYLOR, JJ., dissent for reasons assigned on original hearing.
LEMMON, J., Concurring.
When the Louisiana Workers' Compensation Act provides basic coverage for the employee's claim, compensation is the exclusive remedy, even if the claim is denied because of the employee's failure to meet the burden of proof as to another element of the claim.
This employee's claim was based on contracting myelodysplasia, a disease that can be caused by exposure to toxic chemicals, and her claim therefore was a covered claim under the definition of occupational disease in La.Rev.Stat. 23:1031.1. Causation was an essential element of this employee's covered compensation claim, and her claim was denied (in the earlier compensation action) because she failed to prove causation, and not because her claim was not covered by the Act.
The issue thus becomes whether the Legislature's raising the burden of proof for certain employees with occupational disease claims either unconstitutionally discriminates against those employees or substantially departs from the 1914 trade-off that gave rise to the Workers' Compensation Act. Pretermitting the constitutionality issue, I conclude that the Legislature's raising the burden of proof for certain employees eliminated the compensation remedy for those employees, making the employer subject to tort liability.
If La.Rev.Stat. 23:1031.1 contained only the presumption that a covered occupational disease contracted by an employee who worked for the employer for less than twelve months was not contracted in the course of and arising out of employment, but the standard for the burden of proof for causation were the normal preponderance of the evidence, then the employee clearly would have a remedy under the Louisiana Workers' Compensation Act that would be the exclusive remedy. Under such a statute, the fact that the employee cannot meet the burden of proof of causation by a preponderance of the evidence does not mean that the employee (whether on the job more than twelve months or less than twelve months) does not have a remedy under the Workers' Compensation Act; the Act clearly provides a remedy, but the employee cannot meet the standard of the normal burden of proof that applies in every compensation action.[1] When the Workers' Compensation *141 Act provides a remedy under the normal standard of proof, this is the employee's exclusive remedy, and that rule does not change simply because the employee loses the suit filed in pursuing that remedy, whether because of failure of proof of causation, prescription or some other reason not related to coverage under the Act.
The thing that makes this case different is the higher burden of proof (especially when combined with the presumption of non-causation). An employee who can prove employment-rooted causation of a covered occupational disease by a preponderance of the evidence, but cannot prove that causation by clear and convincing evidence (the interpretation of "an overwhelming preponderance of the evidence" by the court of appeal in this case[2]), has been denied a remedy under the Act because the Legislature has eliminated that employee's compensation remedy by raising the burden of proof.[3] Such an employee therefore is entitled to a remedy in tort.
Of course, we do not know in the present case whether the employee (who filed a compensation action and lost under the higher burden of proof) could have proved causation by a preponderance of the evidence.[4] Since the Legislature never gave this employee a chance to prove causation by a simple preponderance of the evidence, she has been denied a remedy under the Workers' Compensation Act, and the tort remedy is therefore available to her if she can prove causation (and negligence) by a preponderance of the evidence.[5]
NOTES
[*] Johnson, J., not on panel. Rule IV, Part 2, § 3.
[1] LA. REV. STAT. 23:1031.1(D) provides as follows:

Any occupational disease as herein listed contracted by an employee while performing work for a particular employer in which he has been engaged for less than twelve months shall be presumed to be non-occupational and not to have been contracted in the course of and arising out of such employment, provided, however, that any such occupational disease so contracted within the twelve months' limitation as set out herein shall become compensable when the occupational disease shall have been proved to have been contracted during the course of the prior twelve months' employment by an overwhelming preponderance of evidence. (emphasis added)
[2] LA. REV. STAT. 23:1031.1(H) provides as follows:

The rights and remedies herein granted to an employee or his dependent on account of an occupational disease for which he is entitled to compensation under this Chapter shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents or relatives. Although the plaintiffs reference the general
provision contained in LA. REV. STAT. § 23:1032 with regard to the exclusivity of the workers' compensation remedy, we choose to analyze the exclusivity argument in this case by utilizing LA. REV. STAT. § 23:1031.1(H), the exclusivity provision particularly tailored to the question of occupational diseases. Paragraph H was enacted in 1952 and its content has remained unchanged.
[3] In brief, O'Regan stated that the disease has caused her to undergo a bone marrow transplant and that she will be unable to bear children. She also indicated that her medical expenses have exceeded $200,000.
[4] The Fifth Circuit also recognized that "there is a presumption [in LA. REV. STAT. 23:1031.1(D) ] that [plaintiff's] disease is non-occupational and was not contracted in the course of and arising out of her employment." O'Regan v. Number One Cleaners, 96-769 (La. App. 5 Cir. 2/12/97), 690 So.2d 103, 104.
[5] In addition to Preferred, O'Regan brought suit against thirteen chemical manufacturers and distributors. Only O'Regan's negligence action against Preferred is before us.
[6] This provision was repeated in 1958 Acts 32 without any change in substance.
[7] Aplastic anemia, the disease which afflicts O'Regan, was not one of the exclusive diseases specified in the 1952 and 1958 list of occupational diseases.
[8] All states provide compensation coverage for occupational diseases, however, how they are covered differs markedly. Namely, occupational diseases are covered either: (1) by a general definition of the term; (2) by a broad use of the term "injury"; (3) by an unrestricted coverage of the disease; (4) by a separate act; or (5) by a schedule list followed by a catch-all provision. The abandonment of the scheduled list scheme to the general definition scheme should be recognized as an attempt by the Legislature to broaden, not restrict, those diseases compensable under the occupational disease act. The important distinction today is to distinguish those occupational diseases covered under the act, because they are peculiar to the nature of the employment, from common diseases not covered by the act, because they are not associated with the employment. See generally LARSON'S WORKERS' COMPENSATION LAW (1999).
[9] Although we raise this issue sua sponte, we find it important to address this question because a literal reading of the statute leads to questions regarding the scope of the provision.
[10] The use of the phrase "accident arising out of and in the course of employment" can be traced to 1914 La. Acts 20, when Louisiana first adopted a workers' compensation system.
[11] Commenting on these phrases, we stated in Weber v. State, 93-0062 (La.4/11/94), 635 So.2d 188, 192 n. 5 as follows:

This court has considered the terms "arising out of" and "in the course of" in Section 1031 as dual requirements that cannot be considered in isolation from each other. In a close case, a strong showing with reference to one requirement may compensate for a weak showing with reference to the other requirement. Raybol v. Louisiana State University, 520 So.2d 724, 726 (La.1988). When there is a weak showing with respect to both requirements, the employee is not entitled to compensation benefits. Id.
In the "course of employment" requirement, the court focuses on whether the employee sustains an injury while actively engaged in the performance of his duties during working hours, either on the employer's premises or at a place contemplated by employment activities. Williams v. Regional Transit Authority, 546 So.2d 150 (La.1989); Wex S. Malone & H. Alston Johnson, 13 Louisiana Civil Law Treatise Workers' Compensation Law and Practice § 161 (2d ed.1980). This inquiry focuses upon the time and place relationship between the injury (or disease) and the employment.
In the "arises out of employment" requirement, the court inquires into the character or origin of the risk suffered by the employee and determines whether this risk was incidental to the employment. Williams v. Regional Transit Authority, 546 So.2d at 150 (La.1989); Wex S. Malone & H. Alston Johnson, supra at § 191. An injury arises out of employment if the risk from which the injury resulted was greater for the employee than for a person not engaged in the employment. Mundy v. Department of Health & Human Resources, 593 So.2d 346 (La.1992).
[12] Originally, it was found that occupational diseases were not covered under the Workers' Compensation Act because such injuries did not arise from an accident. Accordingly, it was determined early on that such workers could maintain a tort claim against their employers. Clark v. Southern Kraft Corp., 200 So. 489 (La.App. 2 Cir.1940); Faulkner v. Milner-Fuller, Inc., 154 So. 507 (La.App. 2 Cir.1934). The sole reason for the adoption of LA. REV. STAT. 23:1031.1 was to alleviate employees from the almost impossible task of proving an "accident" in occupational diseases cases; instead, the statute's definition of an occupational disease satisfies the proof requirement so as to be compensable. LaCoste v. J. Ray McDermott & Co., 250 La. 43, 193 So.2d 779, 782 (1967); Dvorak v. Melvin Jones Framing Contractors, 96-701 (La.App. 5 Cir. 1/15/97), 688 So.2d 94.
[13] This conclusion distinguishes n. 17 in our earlier decision in Charles v. Travelers Ins. Co., 627 So.2d 1366 (La.1993). In that footnote we raised the question of whether an employee would have a remedy in tort if the Legislature had increased the burden of proof in a workers' compensation case to the point where the employee cannot prove the claim; ultimately, we did not reach that question because the issue was simply not before us. Although we have a heightened burden of proof in the present case, more importantly, we have a legislatively created presumption that the disease is non-occupational. We are basing our discussion of this case solely upon the statutory presumption placing the employee outside of the act. We are not addressing the issue mentioned in n. 17 in Charles.
[14] In addition, the provisions relative to occupational diseases recognize the applicability of a special prescriptive period, shorter than that for injuries by accident.
[15] By "codal remedies" we mean nothing more than what our sister states, under their common law system, call "common-law remedies." Being a civil law jurisdiction, the rights and remedies granted to our citizenry are expressed in the Code. Other jurisdictions, we note, likewise provide that the legislature cannot limit common-law remedies such that an injured party is left without a remedy. See, e.g., Hale v. Port of Portland, 308 Or. 508, 783 P.2d 506 (1989).
[16] The legislative narrowing of the concept of occupational disease in 1989 prompted the following comments:

[T]o the extent that a similar narrowing of occupational disease occurs by excluding certain things from occupational disease, then these excluded ... maladies might be made the subject of a tort recovery.
13 H. ALSTON JOHNSON, LOUISIANA CIVIL LAW TREATISE, WORKERS' COMPENSATION § 221, at 519 (3d. ed.1994).
[T]he zeal with which certain interests pursued the narrowing of the compensation remedy was matched with equal fervor by the willingness to open tort avenues again for work-related but non-compensable injuries.
14 H. ALSTON JOHNSON, LOUISIANA CIVIL LAW TREATISE, WORKERS' COMPENSATION § 366, at 233 (3d. ed.1994).
[17] These cases must be conceptually distinguished from those where the particular element of damage is not compensable. For example, in Rushing v. Employers' Liab. Assur. Corp., 129 So.2d 576 (La.App. 2 Cir. 1961), the employee worked as a waitress and was injured when she slipped behind the counter. The slip caused occipital nerve damage and neuralgia. The court held that the employee was entitled to total and temporary disability for her cervical sprain, but was not entitled to an award of total and permanent disability because of pain and suffering as the trivial residual pain following the fall did not interfere with her earning capacity. Thus, this element of damage was not compensable.
[18] This class is the one germane to the case sub judice as, under LA. REV. STAT. 23:1031.1(D), one who fails his heightened burden is presumed to have not contracted the disease in the course of and arising out of the employment.
[19] Furthermore, Larson defines "successful" to mean success not only in obtaining a compensation award, but also in collecting it. LARSON'S, § 67.32, at 12-174.
[20] Of course if the employee pursues a claim in tort initially and the employer seeks to avail itself of tort immunity under the Act, the employer has the burden of proving entitlement to immunity. Mundy, 593 So.2d at 349; see also LAWSON, § 100.01[2], at 100-3.
[1] Without the higher burden of proof contained in La.Rev.Stat. 23:1031.1, the presumption is inconsequential. An employee with less than twelve months on the job has the same burden of proof of causation as an employee with over twelve months on the jobthat is, to prove causation by a preponderance of the evidence (more probable than not).
[2] In my concurring opinion on original hearing, I noted that I would construe "overwhelming preponderance of the evidence" simply as more probable than not, rather than above the normal standard. However, that solution is not available for this employee, who allegedly has more than $200,000 in medical bills, because the judgment denying her compensation under the higher standard of proof is res judicata. I therefore must address the consequences of the legislative raising of the burden of proof.
[3] The Legislature, whether intentionally or not, denied certain employeesthose who can prove causation of a covered occupational disease by a preponderance of the evidence the compensation remedy when the employee cannot prove causation by clear and convincing evidence. Such an employee has been denied the advantage contemplated in the 1914 trade-off of a tort remedy (with greater recovery, subject to proof of negligence with several defenses) for a compensation remedy (with lesser, but more certain, recovery).
[4] When the district court had original jurisdiction over both tort actions and workers' compensation action, an injured employee could cumulate alternative demands in the same action. Under the present jurisdiction rules, these demands could not be cumulated in the present action.
[5] Stated otherwise, the employer should not be entitled to immunity against the tort claims of an employee who can prove causation by a preponderance (but not an overwhelming preponderance) of the evidence, because the employer has been legislatively absolved of liability for that employee's valid compensation claim which the employee never had an opportunity to assert.