946 So.2d 695 (2006)
Debra RUFFIN and Dianne Joseph
v.
POLAND ENTERPRISES, L.L.C., Department of Social Services and Division Of Administration.
No. 2006-CA-0244.
Court of Appeal of Louisiana, Fourth Circuit.
December 13, 2006.
Rehearing Denied January 16, 2007.
*696 Madro Bandaries, Madro Bandaries, P.L.C., Gretna, LA, and Wiley J. Beevers, Beevers & Beevers, L.L.P., Gretna, LA, and Sean D. Alfortish, Sean D. Alfortish, PLC, Gretna, LA, for Plaintiffs/Appellees.
Charles C. Foti, Jr., Attorney General, James J. Bolner, Jr., Special Assistant Attorney General, Kim Raines Chatelain, Special Assistant Attorney General, Berrigan Litchfield Schonekas Mann Traina & Bolner, New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge DENNIS R. BAGNERIS SR., Judge MICHAEL E. KIRBY, Judge ROLAND L. BELSOME).
MICHAEL E. KIRBY, Judge.
Appellants, the State of Louisiana through the Department of Social Services and the Division of Administration, seek reversal of the trial court's grant of summary judgment in favor of the plaintiffs and against the defendants. The summary judgment, filed by the plaintiffs, sought to preclude the defense from asserting an affirmative defense that the plaintiffs' exclusive remedy lies within the Louisiana Worker's Compensation Act ("WCA"). The effect of the ruling below exposes the state to tort liability.
Plaintiffs, state employees, instituted this suit, alleging they sustained injuries due to exposure to mold and/or other contaminants in and around their workplace at 1641 Poland Avenue, New Orleans, LA. Plaintiffs assert they experienced illnesses and injuries due to their exposure to these elements at this site, and are asserting their cause of action in tort, not under Louisiana's WCA. Both plaintiffs are employees of the Department of Social Services and worked at leased office space at 1641 Poland Avenue, New Orleans, LA. The Department of Social Services has leased this space since February of 1995, renewing this lease for a second five-year term in February of 2000.
Plaintiffs filed suit on November 19, 2004, against the building owner, Poland Enterprises, L.L.C. and their employer, the Department of Social Services and the Division of Administration. Defendants answered the suit asserting the affirmative defense that under the Louisiana WCA, La. R.S. 23:1032, plaintiffs are prohibited from pursuing a tort claim against their employer. Following this assertion and the introduction of this affirmative defense, plaintiffs filed a Motion for Partial Summary Judgment to determine the viability of the State's workers compensation affirmative defense. Judgment was rendered in plaintiffs' favor. The court found that exposure to mold and mold spores does not fall under the exclusive remedy provision of Louisiana's WCA.
Appellants assert three assignments of error. First, they contend the trial court erred because the plaintiffs failed to overcome the presumption that the exclusive remedy against an employer for illnesses and injuries sustained by an employee is the WCA. Second, appellants assert the trial court improperly held that, despite being suffered in the course and scope of their employment, the employees' injuries/illnesses are not compensable WCA claims if they result from exposure to mold in an office environment. Finally, appellants claim the trial court failed to enforce a legislatively mandated requirement that an employee seek compensation from his employer for injuries or illnesses under the WCA.
DISCUSSION
We conduct de novo review of the granting of motions for summary judgment. George v. Housing Authority of New Orleans, 2004-2167 (La.App. 4 Cir. 6/29/05), *697 906 So.2d 1282. Louisiana Code of Civil Procedure Article 966 guides us in determining whether or not a Motion for Summary Judgment should be granted. La. C.C.P. art. 966(E) treats the topic of when a Motion for Partial Summary Judgment can be rendered regarding a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment will not dispose of the entire case. Jefferson v. Chevron, U.S.A., Inc., 98-0254 (La.App. 4 Cir.1998), 713 So.2d 785, 789.
The issue before us goes to the heart of why the WCA was enacted and where to strike the balance between employers' concerns over liability and employees' concerns over compensation. A motivation for enacting worker's compensation schemes was that employees were at a disadvantage in proving causation because fellow employees were often fearful of testifying against their employer. See Roberts v. Sewerage & Water Bd., 634 So.2d 341 (La.1994), for the rationale behind the creation of the worker's compensation scheme in derogation of general tort law.
An enlightening explanation of how two important concepts interact within the WCA was offered by Sean Toomey in the 75 Tulane Law Review 241 at 242-243:
At the heart of all workers' compensation statutes lies the principle of compromise, a quid pro quo between worker and employer in which the worker gains ready access to a limited remedy in exchange for the employer's immunity from almost all tort liability. The most important element of this bargain is that the employee need not prove that the employer was at fault, a large obstacle in tort law. Rather, the employee must only show that the injury is within the scope of the Act and is causally connected to the employment. The benefit to the employer is that once coverage is established, the employer enjoys immunity from most tort liability, including claims based on negligence. To protect this principle, Louisiana jurisprudence has emphasized the need to take this policy of compromise into account when interpreting the Workers' Compensation Act, and as such, to interpret the coverage provisions liberally, but the immunity provisions narrowly. The concepts of coverage and causation help define the boundaries of the Act's quid pro quo. Once coverage under the Act is established, an employer is guaranteed immunity from tort litigation, but the employee is not guaranteed relief. The issue of causation then determines whether relief is actually granted. Therefore, it is possible for an employee plaintiff covered by the Act to be denied relief for want of causation and, at the same time, to be prevented from seeking damages via tort law because of the employer's immunity, and thus left without remedy of any kind.
La. R.S. 23:1032, entitled exclusiveness of rights and remedies, states:
A. (1)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any *698 principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.
(b) This exclusive remedy is exclusive of all claims, including any claims that might arise against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal under any dual capacity theory or doctrine.
* * *
C. The immunity from civil liability provided by this Section shall not extend to:
(1) Any officer, director, stockholder, partner, or employee of such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment;
* * *
Plaintiffs argue that mold exposure is not a danger covered by the Worker's Compensation Statute. Defendant argues that we should interpret the occupational disease section of the Worker's Compensation Statute broadly to include mold exposure. However, Scott v. Pontchartrain Materials Corp., 98-1611 (La.App. 4 Cir. 8/12/98) 717 So.2d 682, guides our interpretation of the Statute, in which we stated:
The immunity provision of La. R.S. 23:1032 must be narrowly construed. Stelly v. Overhead Door Co. of Baton Rouge, 94-0569, p. 4 (La.12/8/94), 646 So.2d 905, 910. "Every presumption should be on the side of preserving the general tort or delictual rights of an injured worker against the actual wrongdoer, in the absence of explicit statutory language limiting or excluding such rights." Roberts v. Sewerage and Water Bd. of New Orleans, 92-2048 (La.3/21/94), 634 So.2d 341, 346.
Plaintiffs consider injury from mold to fall outside the definition of the Statute. La. R.S. 23:1021(8)(a) defines the term "injury" and "personal injuries" as:
(8) (a) "Injury" and "personal injuries" include only injuries by violence to the physical structure of the body and such disease or infections as naturally result there from. These terms shall in no case be construed to include any other form of disease or derangement, however caused or contracted.
The Legislature added the current definition of "injury" in 1983. Subsequently, subparts (b)-(e), dealing with mental injuries, stress and heart related injuries, were added as those issues arose. This indicates the Legislature was cognizant that the Worker's Compensation scheme was in derogation of the general tort law. It wanted to carve out narrow exceptions to coverage in the scheme, such as in the case of cardiovascular disease, so as to not allow a worker to receive compensation without carrying the burden of proving causation.
The Statute divides those who qualify for compensation into two classifications for claims. The first is via accident, as defined in La. R.S. 23:1031(A), which states:
A. If an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.
and the second is via occupational disease, La. R.S. 23:1031.1, which was added in Acts 1990, and states:
A. Every employee who is disabled because of the contraction of an occupational disease as herein defined, or the *699 dependent of an employee whose death is caused by an occupational disease, as herein defined, shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment. B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section.
* * *
Insofar as the applicability of La. R.S. 23:1031(A), to plaintiffs' injuries and illnesses, we agree with the trial court that the prolonged exposure to mold and mold spores over a period of several months or years, as substantiated in the record, cannot be deemed a "precipitous event happening suddenly or violently." Thus, plaintiffs do not fall under the accident classification of the compensation scheme.
As concerns the occupational disease category, La. R.S. 23:1031.1, the test is whether exposure to mold and mold spores are "conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease." Defendants argue that the Legislature has not provided any exception within the WCA for injuries or illnesses related to mold in the workplace, which would exempt such claims from coverage. We reject this argument, as the trial court, did because of the history of the occupational disease amendments and the statutory language of the La. R.S. 23:1031.1.
Defendants cite Dunn v. Riverview Medical Center, XXXX-XXXX (La.App. 1 Cir. 6/21/02), 822 So.2d 736, as support for the proposition that mold exposure should be treated the same as a registered nurse suffering lymphedema. We distinguish Dunn from this case because a nurse's exposure to lymphedema is a condition characteristic of and peculiar to the occupation or employment in which the employee is exposed to such.
The trial court's Partial Summary Judgment is supported by jurisprudence on this issue, albeit dicta. In O'Regan v. Preferred Enterprises, Inc., XXXX-XXXX (La.3/17/00), 758 So.2d 124, the Supreme Court noted:
The defendant's argument that the Act provides the exclusive coverage for occupational diseases is misplaced with respect to LA. REV. STAT. 23:1031.1(H). Although the Act provides coverage for occupational diseases, it does not provide the exclusive remedy if the work-related disease falls outside the basic coverage of the Act. The Act does not and cannot foreclose all types of civil actions between employers and employees. Rather, the exclusivity provisions of the Act preclude only those civil tort actions premised upon the fault of the employer vis-a-vis the employee for workplace injuries compensable under the Act. A compensable injury under the Act is one contracted in the course of and arising out of the employment and for which the injured employee is entitled to receive compensation. LA. REV. STAT. 23:1031.1(D).
The exclusive remedy provision refers only to injuries for which the employee or his dependent is entitled to be compensated, and the Act becomes the exclusive *700 remedy for employees against their employers only for such diseases. See LA. REV. STAT. 23:1031.1(H). Accordingly, injuries non-compensable under the Act by LA. REV. STAT. 23:1031.1(D) are also excluded from the shield against tort liability provided to employers by the exclusivity clause in LA. REV. STAT. 23:1031.1(H).
Id., 758 So.2d at 134, p. 14-15
While the defense correctly notes that the ultimate holding of O'Regan, dealt with a temporal issue of the Statute, the above cited language is certainly applicable to this set of facts and offers support for the trial court's Judgment.
We articulate a distinction in the WCA, which states that the party seeking application of the WCA should carry the burden of proof. Here the defendant seeks the benefit of the WCA limitation of liability as an affirmative defense, hence, the burden falls upon the defense to prove that the WCA applies. Reviewing the statutory history of the WCA, we find that the defendant does not meet its burden of proof. Injuries and illnesses resulting from mold exposure in a clerical job do not fall under the definition of La. R.S. 23:1031.1. The plaintiffs were hired as clerical staff. Contrary to defendant's assertions, we can find no basis in the statutory language or reasonable explanation as to why exposure to mold and mold spores could be considered "characteristic of and peculiar to" clerical work. Thus, as the trial court found, plaintiffs do not fall into the second classification of those entitled to receive coverage that would bar delictual actions.
For the aforementioned reasons, we affirm.
AFFIRMED.