ROBERT M. MURPHY, Judge.
|gThis is a workers’ compensation case. From the OWC’s judgment awarding workers’ compensation benefits, medical expenses, medication expenses, travel expenses, attorney’s fees, penalties, interest, and costs on the basis of a work-related injury, both the claimant, Virginia Mulder, and the employer, East Jefferson Hospital District No. 2, d/b/a East Jefferson General Hospital (“East Jefferson”), seek relief. For the reasons that follow, we reverse the judgment. Additionally, we do not find claimant is entitled to relief under the occupational disease provision of the Louisiana Workers’ Compensation Act.
FACTUAL AND PROCEDURAL BACKGROUND
From 2004, Ms. Virginia Mulder, a registered nurse, was employed by East Jefferson in its rehabilitation unit as a charge nurse on the night shift. She testified that her duties included the frequent lifting of patients to toilet them, getting them dressed, assisting them in washing and grooming, and preparing them for photographing every Saturday for bedsores.
|sOn December 9, 2013, Ms. Mulder commenced this case by filing a disputed claim for compensation (Form 1008) against East Jefferson. In her petition, she alleged that an accident occurred on April 30, 2013; and that she “developed chronic bilateral bicipital tendonitis/distal biceps tendinopathy as a result of repetitive lifting.” She sought workers’ compensation benefits, including medical expenses, indemnity, penalties, attorney’s fees, interest, and costs.
Claimant contends that East Jefferson admitted her allegation of an occupational disease. East Jefferson answered the claim admitting in its January 16, 2014 and April 29, 2014 filings that Claimant “sustained an injury or occupational disease on the date set forth.” (Emphasis added). However, East Jefferson amended its answer on June 5, 2014, shortly before trial “den[ying] that the Claimant sustained an injury or occupational disease on or about the date set forth on the claim for compensation.”
At the June 9, 2014 trial of this matter, the parties stipulated that claimant was an employee at the time her alleged employment-related condition occurred. The deposition of claimant’s treating physician, Dr. John F. Nitsche, was admitted in lieu of live testimony over East Jefferson’s objection. The OWC tribunal heard testimony from claimant, her husband, Robert *608 Mulder, and Lilli Bear, East Jefferson’s corporate representative and representative of the third-party administrator, CTMSI. We briefly summarize the witnesses’ testimony.
VIRGINIA MULDER
Ms. Mulder testified that she worked the night shift as charge nurse at East Jefferson for ten years. She described lifting and moving patients to toilet them, even during her night shift and despite having nursing assistants to help her. She described a job that was very physical. She “was at work when her arms started aching.” A couple of weeks later on May 22, 2013, she went to see Dr. Kiran LZaveri and told him that she could not lift her arms; she was diagnosed with tendonitis. She testified that when the condition worsened, she treated with Dr. Nitsche from July 2013 to February 2014. Dr. Nitsche diagnosed bilateral bicipital tendonitis in both arms. She underwent three months of therapy. Later, with Dr. Burvant, she received injections in her elbows.
Claimant does not describe an event or injury, but rather a gradual onset. On cross-examination, claimant admitted that good nursing procedure requires a nurse to raise the bed to hip level to turn or move a patient. Claimant admitted to knowing only one other nurse that may have had bilateral bicipital tendonitis, but who is no longer working at the hospital.
ROBERT MULDER
Robert Mulder, claimant’s husband of 14 years, testified about his wife’s injury. He says that “[s]he lifts” at work but does not know what is causing the pain:
Q. And did she tell you at all what her opinion was as to what was causing the pain?
A. She didn’t know. I mean to be honest with you, she had no idea. And she’s never reverlated [sic] from that.—
[[Image here]]
Q. Do you know, Mr. Mulder, if y’all got a better sense of what was causing it based on her conversation with her physician?
A. Yes.
Q. And what was your sense?
A. Basically lifting. She doesn’t lift at home, trust me.
l fiDR. JOHN NITSCHE
Dr. Nitsche’s deposition was admitted in evidence. He testified that he saw Ms. Mulder from July 18, 2013, until early in 2014. In response to questions regarding causation, Dr. Nitsche testified as follows:
Q. Have you formed an opinion as to a reasonable medical certainty as to the cause of Miss Mulder’s bilateral biceptal [sic] — is that it?
* * *
A. I believe it is related probably to her work in the Rehabilitation Unit at the hospital.
[[Image here]]
Q. You said related to. How much related to, sir? A hundred percent? Seventy percent? Thirty percent?
A. I think that within the kind of work she does-and I’ve seen her work before. I’ve seen other people work like she does. I think it’s well within the realm of possibility that every bit of her pain in the elbows could be related to her work. I think it’s within that context, yes.
Dr. Nitsche stated with “one hundred percent certainty” that claimant’s present injuries were causally related to her work in the rehabilitation unit.
Dr. Nitsche further testified:
*609 I’ve known her long enough to know that she is an exceptional nurse. There were a couple of occasions I had to come out late at night to see patients in the Rehab Unit long after her hours — her shift was over and she would stay to make sure I understood the issues completely.
Addressing the issue of her alleged condition possibly being peculiar to the job of rehabilitation nurse, Dr. Nitsche answered:
Q. In all of your years here at East Jefferson-and all of your years here in practice, how many nurses other than Miss Mulder have you treated for bilateral distal bicipital—
A. None.
Q. —tendonitis? None.
1 «LILLI BEAR
Lilli Bear, East Jefferson’s corporate representative, testified that Ms. Mulder’s claim was denied because there was “no accident per the statute and no medical evidence that the cause or condition of the disease or illness was related to the occupation of the claimant.” Claimant’s physician, Dr. Nitsche, referred his patient to his partner, Dr. Carol Meyer. Ms. Bear noted that in Dr. Meyer’s medical records, clainrant’s X-ray results show, “AC joint arthritis on the left, as well as, some mild ulnohumeral arthritic changes.” On review of Dr. Meyer’s entire record, Ms. Bear testified “[tjhere is nothing in here that this is related to Ms. Mulder’s occupation.” On cross-examination, Ms. Bear recalled that in a recorded statement of October 2, 2013, claimant stated her condition was caused by repetition, pulling, pushing patients and getting them up from bed.
Following the June 9, 2014 trial on the merits, the OWC judge rendered a judgment on July 22, 2014, on findings associated solely with the disputed claim for a work-related injury. The judgment set claimant’s compensation rate at $605.00 per week; ordered that defendants be given credit for all workers’ compensation benefits which were paid by them in accordance with the law; assessed $8,000.00 in penalties for failure to pay medical bills, medication expenses, diagnostic testing, and weekly indemnity benefits; assessed $8,000.00 in attorney’s fees; and ordered that all costs and interest be paid by defendants.
The OWC judge did not assign reasons but articulated her findings as follows: she found that claimant had a compensable work-related accident in April 2013; that claimant is entitled to temporary total disability benefits from August 28, 2013 and continuing; that claimant’s work-related injuries were to both her arms and elbows; that claimant has proven a causal connexity between the accident in April 2013 and her disability; that defendants shall pay for all medical expenses, ^medication expenses and travel expenses for the injuries, including therapy, injections, diagnostic testing, medical supplies, and a brace; and that defendants did not reasonably controvert claimant’s entitlement to benefits for her injuries.
From this judgment, East Jefferson was granted a suspensive appeal on August 4, 2014. Claimant responded, conceding that there was no work-related injury and seeking modification of the OWC judgment to include a finding and award based on a theory of occupational disease.[1]
*610 STANDARD OF REVIEW
In workers’ compensation cases, the appropriate standard of review that appellate courts apply to the OWC’s factual findings is the manifest error or clearly wrong standard. Hahn v. X-Cel Air Conditioning, Inc., 12-0236, pp. 4-5 (La.App. 4 Cir. 1/9/13), 108 So.3d 262, 266 (citing Dean v. Southmark Constr., 03-1051, p. 7 (La.7/6/04), 879 So.2d 112).
ASSIGNMENTS OF ERROR
Appellant, East Jefferson, contends the OWC erred as follows:
The Workers’ Compensation Judge erred in holding that the employee established that she sustained a work-related accident, when claimant failed to show “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury, which is more than simply a gradual deterioration or progressive degeneration”, as stated in La. R.S. 23:1021(1). Furthermore, the Workers’ Compensation Judge erred when she held that the claimant was entitled to benefits and the claimant failed to introduce any evidence that her condition was characteristic of and peculiar to her trade, as she pled in the formal findings before the Court.
DISCUSSION
On appeal, both parties agree that the OWC judge erred in finding that Ms. Mulder suffered a work-related accident under the LWCA. Claimant admits that there was no traumatic event, which is to say that her injury was “gradual.” East Is Jefferson notes there are discrepancies in claimant’s testimony regarding the dates of the onset of her aching arms and seeking medical attention. She saw Dr. Za-veri’s nurse practitioner on May 22, 2013, a week after onset, but then claims the date of injury as both April 30, 2013, and early April. Claimant cannot and does not identify a particular event or incident after which her pain began (“at work when arms started aching”). For these reasons, we find the trial court erred in finding a specific work-related event in April 2013 on which to base an award.
Having found above that the OWC tribunal erred in finding that claimant suffered a work-related accident, we now, on de novo review, determine whether the alleged disability is an occupational disease. As stated, the OWC judge did not address the issue of occupational disease.
In so far as claimant argues that East Jefferson admitted claimant’s injury to be an occupational disease in its answers, we find this argument lacks merit. Claimant’s pre-trial statement, filed on March 26, 2014, acknowledges the issue of occupational injury as the central, contested issue: she contended that she “developed an occupational injury due to repetitive lifting of patients.” East Jefferson’s amended answer is consistent with claimant’s pre-trial order as to put both parties on notice that this issue was pending at trial. East Jefferson further relies on the disjunctive “or” in its answer. We therefore find that the issue of occupational injury was joined for trial. Additionally, the trial court has much discretion to prevent manifest injustice and to control the proceedings so that justice is done. La. C.C.P. arts. 1551 and 1631.
 The claimant in a workers’ compensation action based on an occupational disease must establish by a preponderance of the evidence that there is a disability *611 which is related to the employment-related disease. Vargas v. Daniell Battery Mfg. Co., 93-1249, p. 7 (La.App. 1 Cir. 5/20/94), 636 So.2d 1194, 1197. An |9occupational disease means only that the disease or illness is “due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease.” La. R.S. 23:1031.1(B); see Coats v. American Tel. & Tel. Co., 95-2670, p. 7 (La.10/25/96), 681 So.2d 1243, 1247. The claimant must show that she contracted the disease during the course of her employment and that the disease was the result of the nature of the work performed. Vargas, supra.
Here, claimant was able to show only a possibility that her employment with East Jefferson contributed to her condition. Prior to the extension of workers’ compensation coverage to include occupational disease, a worker’s entitlement to compensation hinged on the occurrence of' an “accident,” which can only be established by the claimant’s proof of an “identifiable precipitous event” that caused injury. While enlarging workers’ compensation coverage to cases of occupational disease, La. R.S. 23:1031.1 retains the requirement that an employee establish that the disease arises from his work, ie., from “causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment” in which the employee worked. Id. (Emphasis added). The claimant must show that she was injured during the course of employment and that the injury was the result of the nature of her work performed. The causal link between a claimant’s injury and her work-related duties must be established by a reasonable probability; the claimant here fails in her burden of proof upon a showing of only a possibility that the employment caused the injury or that other causes not related to the employment are just as likely to have caused the disease. Claimant here has failed to show that the alleged occupational disease was the result of the nature of the work performed.
ImClaimant cites no case where a rehabilitation nurse was granted workers’ compensation benefits due to repetitive lifting of patients. Furthermore, claimant’s medical expert notes his total lack of knowledge of any instance where a nurse’s lifting patients constituted an occupational disease. See Picard v. Dynamic Offshore Contractors, 618 So.2d 1183 (La.App. 3 Cir.1993) (court of appeal found that claimant, a structural fitter, failed to show tennis elbow as an occupational disease from his use of C-clamps where injury was not characteristic among others in his trade or occupation.).
Ms. Mulder was only able to show a possibility that her East Jefferson employment contributed to her condition. The “nature of the work” statutory requirement of occupational disease is not supported by the record of one unidentified nurse with tendonitis.
Considering the foregoing on de novo review, we find that claimant failed to meet her burden that she sustained an occupational disease.
DECREE
For the foregoing reasons, the judgment of the Office of Workers’ Compensation is reversed in its entirety. Costs of this appeal are assessed to claimant/appellee Ms. Mulder.

REVERSED

. It is noted that although Claimant filed an answer to the appeal seeking modification of the OWC judgment, it was untimely and therefore her requests for modification of the judgment in the answer cannot be considered by this Court. See McIntyre v. Sussman, 10-1281 (La.App. 4 Cir. 10/26/11); 76 So.3d 1257, 1263, writs denied, 11-2777 *610 (La.2/17/12); 82 So.3d 290 and 11-2791 (La.2/17/12); 82So.3d291.