STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-748


AMY DUPLECHIN

VERSUS

ST. LANDRY PARISH SCHOOL BOARD,  ET AL.


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DISTRICT 4
PARISH OF EVANGELINE, NO. 14-03930
ANTHONY PALERMO, WORKERS' COMPENSATION JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of John D. Saunders, Marc T. Amy, and D. Kent Savoie, Judges.


AFFIRMED.

Richard E. Smith
The Law Office of Richard E. Smith, APLC
1022 LaSavanne Drive
Breaux Bridge, LA   70517
Lafayette, LA   70501
(337) 247-4400
COUNSEL FOR PLAINTIFF/APPELLANT:
     Amy Duplechin

Courtney T. Joiner
Hammonds, Sills, Adkins & Guice, LLP
2431 S. Acadian Thruway, #600
Baton Rouge, LA   70808
(225) 923-3462
COUNSEL FOR DEFENDANT/APPELLEE:
     St. Landry Parish School Board

**AMY, Judge.**

The claimant school teacher reported a worsening of her underlying respiratory condition after alleged exposure to mold in her middle school classroom. The employer denied her claim. After the claimant filed a disputed claim form and the parties submitted the matter on briefs and exhibits, the workers' compensation judge denied benefits upon a finding that the claimant failed to sustain her burden of proof as to causation. The claimant appeals, questioning the denial of benefits and seeking an award of benefits, penalties and attorney fees. For the following reasons, we affirm.

### Factual and Procedural Background

The record in this workers' compensation matter indicates that the claimant, Amy Duplechin, began employment as a teacher with the St. Landry Parish School Board in 2000. During her employment, Ms. Duplechin suffered from respiratory symptoms which resulted in periodic absences from her work. These absences included a month-long period of extended sick leave in 2001,[1] a 2005 semester-long medical sabbatical,[2] and another semester-long medical sabbatical in 2011. In the physician's statement accompanying this latter sabbatical, Dr. Jose Santiago, indicated a February 9, 2011 diagnosis of sarcoidosis. The School Board subsequently granted the claimant an extended sick leave from January 14, 2013, through February 25, 2013. Dr. Santiago again noted sarcoidosis as the claimant's

---

[1] The extended sick leave is commemorated in the record by a physician's statement reflecting diagnoses of pyelonephritis, allergies, and bronchitis.

[2] The claimant's sabbatical medical leave application from the Spring 2005 semester includes a physician's statement reporting the claimant's diagnosis as: "Headache, Viral Syndrome, Chronic Fatigue 2° Viral Syndrome[.]"

diagnosis. By February 28, 2013, however, Dr. Santiago indicated that the claimant was "ready to return" to "her full duties[.]"

The claimant alleges that the present matter arose when she returned to prepare her classroom for the fall 2013 semester on July 31, 2013. She explained in her deposition that, upon moving a shelf in the classroom, she discovered black mold on the back of the shelf and a type of "mushroom growth all along the side of [the] air conditioner unit." Notes submitted into evidence by the School Board indicate that both the claimant and custodial staff cleaned the visible condition. The notations further reveal that the claimant was moved to a different classroom and was provided with an air filtration device.[3] By the end of August 2013 however, the air filtration device was removed.

The claimant explained in the deposition entered into evidence that she last worked on October 1, 2013 "[b]ecause of [her] sarcoidosis and the effects that it has on [her] body." Additionally, in the claim form instituting this matter, she alleged that she "discovered the mold in the classroom and as a result of working in the mold infested classroom has developed an aggravation of her condition of lung sarcoidosis." By the proceeding, the claimant suggested that the School

---

[3] The record indicates that the School Board engaged Poché Prouet Associates to conduct an evaluation of samples taken from both classrooms. Noting that the classroom materials had been cleaned and discarded, the firm explained that "through visual observation it appeared that there were several issues that could contribute to poor air quality and contribute to mold growth." It noted that:

> It is common for mold spores to be present in buildings. However, the level or count of these spores should be much lower than that of those present outside. Air samples were taken inside and outside for comparison. As you will find in the attached analyzed sample results, mold spores were found. The type of mold spores found inside are common in the outside air and typically found indoors due to the circulation of the outdoor air to the indoor areas by the regular opening of doors and windows.

> The report proposed certain corrective measures, which included cleaning air conditioning coils and systems as well as repairing damaged walls in order to stop moisture infiltration.

Board "failed to timely pay indemnity benefits and failed to timely authorize/pay medical benefits." In turn, she sought payment of penalties and attorney fees due to a failure to reasonably controvert her claim.

The parties submitted the matter to the workers' compensation judge on briefs and exhibits. After consideration, the workers' compensation judge determined "that the law and evidence favors the defendant for the reasons assigned in open court."

The claimant appeals, asserting that:

[1.] The Trial Court committed manifest error and was clearly wrong in finding that AMY DUPLECHIN did not prove a causal connection between her current physical condition and exposure to mold.

[2.] The Trial Court committed manifest error and was clearly wrong in finding that AMY DUPLECHIN is not entitled to indemnity or medical benefits.

[3.] The Trial Court committed manifest error and was clearly wrong in finding that AMY DUPLECHIN is not entitled to indemnity or medical benefits.[4]

[4.] The Trial Court committed manifest error and was clearly wrong in finding that AMY DUPLECHIN is not entitled to … penalties or attorney's fees.

## Discussion

With regard to the type of claim for occupational disease advanced in this case, La.R.S. 23:1031.1 provides that:

A. Every employee who is disabled because of the contraction of an occupational disease as herein defined, or the dependent of an employee whose death is caused by an occupational disease, as herein defined, shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.

---

[4] We note that duplication of Assignments 2 and 3 occurs in the appellant's brief.

B. An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section.

Noting that the above-provision includes broad and expansive wording in its definition of a compensable occupational disease, the supreme court has explained that, by definition, "an occupational disease is one in which there is a demonstrated causal link between the particular disease or illness and the occupation." *Arrant v. Graphic Packaging Int'l, Inc.*, 13-2878, p. 21 (La. 5/5/15), 169 So.3d 296, 309. Notwithstanding any arguments regarding a link between the disease and the occupation that could exist in this case, the issue of causation of the claimant's alleged disability was the primary focus of the workers' compensation ruling.

*Causation*

By her first two assignments of error, the claimant globally addresses certain factual findings expressed in the workers' compensation judge's oral reasons for ruling. In particular, the claimant challenges the workers' compensation judge's rejection of her contention that her pre-existing condition of sarcoidosis was exacerbated by her exposure to mold in the classroom which, in turn, caused the resulting disability. She suggests that the factual determination was manifestly erroneous, pointing to medical records from Dr. Santiago in the preceding months that purportedly reveal no significant complaints. She further suggests that her contemporaneous reporting to him of an increase in complaints—as she asserts were demonstrated in records from that office beginning on August 1, 2013—support a finding of a causal connection between her exposure and the ensuing

4

disability. She suggests that this increase in her reported symptoms undermined the trial court's factual determination that:

> While the Court finds that it is possible that her sarcoidosis was exacerbated by the mold present in the classroom, the Court finds that Ms. Duplechin has not proven that that exacerbation was what has caused her disability. Her condition was not dormant prior to this alleged exposure. There's been no showing as to exactly what the mold was, and there has been no further showing as to a causal connection between her current physical condition and this alleged incident. Ms. Duplechin has not worked since October of 2013 for St. Landry Parish School Board. Yet, her testimony is that her condition continues to deteriorate.
>
> Therefore, the Court finds that there's no causal connection between her current physical condition and the alleged aggravating event. The Court, therefore, does not find that Ms. Duplechin is entitled to indemnity benefits or medical benefits.

On review, we first note that a workers' compensation judgment and its reasons for ruling are distinct documents. *Lestage v. Nabors Drilling Co.*, 10-728 (La.App. 3 Cir. 12/8/10), 54 So.3d 133, *writ denied*, 11-0088 (La. 2/25/11), 58 So.3d 458. It is the former from which appeals are taken, not the reasons for ruling. *Id.* Furthermore, whether this court focuses upon a targeted factual finding, such as the exacerbation argument advanced by the claimant, or even the general issue of causation, our review of the record and the documentary evidence reveals no manifest error in the denial of benefits. *See Clay v. Our Lady of Lourdes Reg'l Med. Ctr.*, 11-1797, p. 11 (La. 5/8/12), 93 So.3d 536, 543 (providing "that factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of review.").

Notably, the claimant explained in her deposition that upon her return to work after the February 2013 extended sick leave, she was "sure that there were some symptoms but they were manageable[.]" However, and while the claimant makes reference to particularized visits with Dr. Santiago immediately before and

after the purported exposure, those documents are not contained within the appellate record.[5] In fact, while the exhibits contain numerous pages of Dr. Santiago's records, they do not include the documents to which the claimant refers. Even if these exhibits had been presented to the workers' compensation judge, an event that is not reflected by the record, an appellate court cannot consider evidence that has not been properly and officially offered and introduced into the record. *Denoux v. Vessel Mgmt. Serv., Inc.*, 07-2143 (La. 5/21/08), 983 So.2d 84. While the exhibits introduced certainly reflect the claimant's underlying condition, as well has her later reporting of increased symptoms, they reveal neither her general condition prior to July 2013, nor her reporting of worsening symptoms immediately thereafter to the degree suggested by her brief. Thus, her assertion that the trial court erred in not presuming that the exposure caused her disability is without evidentiary support.

Rather, the record supports the trial court's ultimate determination that she otherwise failed to bear her burden of proving a causal connection between the exposure and her present alleged disability. Of the records presented to this court, Dr. Santiago's 2014 records reveal that she was experiencing "an exacerbation of her sarcoidosis[,]" not that the exacerbation was attributable to a work-related exposure. Similarly, an August 2014 letter from Dr. Santiago to the claimant's attorney revealed only the claimant's condition and inability to return to work, not

---

[5] The claimant's brief attributes these exhibits to "Claimant's Exhibit No. 2 (Records of Acadiana Medicine Clinic)." The record before the court, however, includes only exhibits submitted by the School Board and those jointly introduced by the parties. The limited exhibits attached to the claimant's trial memorandum do not include the medical records cited by the claimant. While the exhibits include records of the Acadiana Medicine Clinic as "Joint Exhibit M-1[,]" review of that exhibit indicates that it does not include records from the dates referenced by the claimant in her brief to this court.

a statement as to causation. At most, the records demonstrate that, in May 2015, Dr. Santiago composed a letter in which he advised that:

> [The claimant] has had multiple respiratory infections that she relates to exposure to mold in her classroom as well as exposure to sick children in the Fall and Winter initially and now throughout the school year. This has caused her to miss work and file for disability. In my medical opinion, her sarcoidosis was not caused by her school environment. However, its therapy predisposes her to infection so it is more probable than not her condition is aggr[a]vated by exposure to the work environment and children. At present, she has not had an allergic sensitization conversion to molds or environmental allergens.

Similarly, by a note entered in the records and addressed "To Whom It May Concern," Dr. Santiago reported that he was treating the claimant and that: "I feel her respiratory symptoms are aggreviated [sic] by exposure to mold." Again, neither of these statements contain the type of evidence as to causation required by La.R.S. 23:1031.1. Rather, they are only limited opinion as to whether exposure aggravates the claimant's condition.

In fact, the only definitive statement as to causation in this case was submitted by the School Board in the form of a December 2015 report apparently obtained as a second medical opinion. Therein, Dr. J. Darvin Hales reported the alleged exposure and explained that:

> [The claimant's] old records were extensive and have been reviewed. At no time could I tell that she had an exacerbation of sarcoidosis. Although she has complained of shortness of breath and cough on a continual basis since 2011, she has preserved pulmonary function, both preserved FVC and FEV1. Furthermore, the mold investigation done by Poche Prouet Associates failed to confirm any clear excess level of mold in the classroom, and the mold exposure she complains about occurred over a short period of time intermittently for less than three months over two years ago. I do not see any evidence that she has suffered any worsening of her sarcoidosis secondary to mold exposure. From the records available, her sarcoidosis has been free of any significant recurrence since at least 2012.

Given the paucity of evidence regarding causation, and in light of the workers' compensation judge's factual findings, we leave the underlying ruling as to causation undisturbed. This finding pretermits consideration of the claimant's remaining prayer for indemnity benefits, as well as penalties and attorney fees.

## DECREE

For the foregoing reasons, the ruling of the trial court is affirmed. Costs of this proceeding are assessed to the claimant/appellant, Amy Duplechin.

**AFFIRMED.**