CHAISSON, J.
In this claim for workers' compensation benefits, the employee, Angela Douglas Lyle, appeals the decision of the workers' compensation judge that granted summary judgment in favor of her employer, Brock Services, L.L.C. ("Brock"), on the issue of whether Mrs. Lyle suffered an occupational disease within the meaning of the Louisiana Workers' Compensation Act ("LWCA"). For the following reasons, we affirm the ruling of the workers' compensation judge.
FACTS AND PROCEDURAL HISTORY
Mrs. Lyle began her employment with Brock in the payroll division in March of 2013. Her office was located in a trailer on the premises of the Valero plant in Norco. Mrs. Lyle claimed that from the beginning of her employment, she observed mold throughout the trailer on air vents, window sills, ceiling tiles, and baseboards, and that over time, the amount of mold increased. According to Mrs. Lyle, she began experiencing symptoms in the spring and summer of 2015, which included fatigue, phlegm in her chest and throat, burning, watery eyes, and sores in her nose. Throughout the year, her symptoms worsened, and on December 31, 2015, she suffered a nosebleed in front of her safety manager, which prompted a medical evaluation.
After testing confirmed the presence of mold and fungal spores in the offices, the trailer, in which Mrs. Lyle worked, was replaced in January of 2016.[1] Thereafter, Mrs. Lyle's headaches and nosebleeds stopped, but she continued to experience fatigue, phlegm in her chest and throat, and burning eyes. According to Mrs. Lyle, by April of 2016, her symptoms progressed, and she started experiencing pain in various parts of her body, increased fatigue, shortness of breath, and cognitive problems. In light of the progression of her symptoms, Mrs. Lyle resigned from her employment with Brock on June 19, 2016.
By August of 2016, Mrs. Lyle began experiencing abdominal bloating, numbness and tightness in her abdomen, swelling under her arms, and the feeling of having lumps under her skin. In addition, her breathing difficulties, upper back pain, and fatigue were all getting worse. In October *1012 of 2016, Mrs. Lyle went to the St. Tammany Parish Hospital emergency room two times due to her worsening symptoms. After a battery of tests, Mrs. Lyle was diagnosed with sarcoidosis 2 of her lungs and lymph nodes.
On November 15, 2016, Mrs. Lyle filed a disputed claim for compensation with the Office of Workers' Compensation, alleging an occupational disease and seeking wage and medical benefits, choice of physician, and penalties and attorney's fees. Brock filed an answer to her claim on December 7, 2016, and requested a preliminary determination hearing in accordance with La. R.S. 23:1201.1. After a hearing, the workers' compensation judge determined that "Mrs. Lyle's claim for Workers' Compensation benefits is denied." In its decision rendered on June 23, 2017, the workers' compensation court expressed that under the particular facts of this case, the issue of mold exposure and the consequential issue of a clerical worker contracting sarcoidosis due to mold exposure at the office do not fall under the LWCA and further that neither the mold exposure nor developing sarcoidosis qualifies as an accident or an occupational disease under the LWCA.
On August 25, 2017, Brock filed a motion for summary judgment alleging that there is no genuine issue of material fact "that this claim is not compensable because the claimant cannot establish the existence of an occupational disease as required by the Act," and thus, Brock is entitled to judgment as a matter of law. In its memorandum in support of its motion, Brock specifically argued that sarcoidosis is not an enumerated disease under the act and no evidence has been presented to show that sarcoidosis was due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which Mrs. Lyle was employed. Mrs. Lyle thereafter filed an opposition to the motion for summary judgment, asserting that summary judgment is precluded because there remains a critical question of fact to be decided, that being whether Mrs. Lyle's sarcoidosis was caused by her employment at Brock.
At the September 15, 2017 hearing on the motion for summary judgment, the parties submitted all the exhibits that were previously presented during the preliminary determination hearing, which included, among other items, Mrs. Lyle's medical records and the deposition testimony of Dr. Lesley Saketkoo, Mrs. Lyle's treating physician, and Dr. Brobson Lutz, an expert retained by Brock to evaluate the case. After considering the arguments of counsel and the exhibits introduced, the workers' compensation judge granted Brock's motion for summary judgment and dismissed her claim with prejudice on the basis that Mrs. Lyle's sarcoidosis did not satisfy the definition of "occupational disease" under the LWCA. The workers' compensation judge subsequently issued written reasons, in which she explained her ruling as follows:
Louisiana Revised Statute § 23:1031.1(B) provides that "[a]n occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease." In interpreting La. R.S. § 23:1031.1(B), the Fourth Circuit has determined that injuries and illnesses resulting from mold exposure in a clerical job do not constitute *1013 an actionable Worker's Compensation claim as they do not present an "occupational disease" as defined in the Act. See Ruffin v. Poland Enterprises, L.L.C., 2006-0244 (La. App. 4th 12/13/06), 946 So.2d 695, 699-700, writ denied , 954 So.2d 163 (La. 2007) ; Watters v. Dep't of Social Services , 2008-0977 (La. App. 4th Cir. 6/17/09), 15 So.3d 1128, 1141, writ denied , 2009-1651 (La. 10/30/09), 21 So.3d 291. Thus, as a matter of law, Claimant's sarcoidosis is not an "occupational disease" that is compensable under the Louisiana Worker's Compensation Act. The Court therefore makes no determination on the issue of causation.
Mrs. Lyle now appeals, setting forth the following assignment of error:
The OWC legally erred by ignoring the Louisiana Supreme Court's last expression of the law regarding what constitutes an "occupational disease" under La. R.S. § 23:1031.1 as set forth in Arrant v. Graphic Packaging International, Inc. , 2013-2878 (La. 5/5/15), 169 So.3d 296, in favor of contrary appellate jurisprudence.
DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Upton v. Rouse's Enterprise, LLC , 15-484 (La. App. 5 Cir. 2/24/ 16), 186 So.3d 1195, 1198, writ denied , 16-580 (La. 5/13/16), 191 So.3d 1057. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2).
According to La. C.C.P. art. 966(A)(3), a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. The burden of proof is on the party moving for summary judgment. However, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover is not required to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden then shifts to the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).
Appellate courts review a judgment granting or denying a motion for summary judgment de novo . Thus, appellate courts ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Upton v. Rouse's Enterprise LLC , 186 So.3d at 1198-99. The decision as to the propriety of a grant of a motion for summary judgment must be made with reference to the substantive law applicable to the case. Ricalde v. Evonik Stockhausen, LLC , 16-178 (La. App. 5 Cir. 9/22/16), 202 So.3d 548, 551-52, writ denied , 16-1923 (La. 12/16/16), 212 So.3d 1170.
For purposes of workers' compensation claims, an occupational disease is defined in La. R.S. 23:1031.1(B) as follows:
An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in *1014 which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section.
In determining whether an illness constitutes an occupational disease within the meaning of the LWCA, courts have consistently considered the employee's work-related duties and the nature of the employment. In Ruffin v. Poland Enterprises L.L.C., supra , the Fourth Circuit addressed the same issue that is presently before this Court - whether mold exposure in the workplace constituted an occupational disease within the meaning of the LWCA. In that case, state employees filed a tort suit against their employer, the Department of Social Services and the Division of Administration, alleging that they suffered injuries and illnesses due to their exposure to mold and/or contaminants in and around their workplace. In response, the employer asserted the affirmative defense that the employees were prohibited from pursuing a tort claim under the provisions of the LWCA. The employees thereafter filed a motion for partial summary judgment to determine the viability of the employer's workers' compensation affirmative defense. The trial court granted the employees' motion for partial summary judgment finding that exposure to mold and mold spores did not fall under the exclusive remedy provision of the LWCA. The employer thereafter appealed.
The Fourth Circuit affirmed the ruling of the trial court, finding that the employees' claims against their state employer for exposure to mold in the workplace fell outside the scope of the LWCA because those claims did not fall under the accident or occupational disease classification of the compensation scheme. In discussing whether exposure to mold and mold spores constituted an occupational disease within the meaning of the LWCA, the appellate court stated, "the test is whether exposure to mold and mold spores are 'conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease.' " Applying this test, the appellate court concluded as follows:
Injuries and illnesses resulting from mold exposure in a clerical job do not fall under the definition of La. R.S. 23:1031.1. The plaintiffs were hired as clerical staff. Contrary to defendant's assertions, we can find no basis in the statutory language or reasonable explanation as to why exposure to mold and mold spores could be considered 'characteristic of and peculiar to' clerical work. Thus, as the trial court found, plaintiffs do not fall into the second classification of those entitled to receive coverage that would bar delictual actions.
Ruffin , 946 So.2d at 700.
Relying on its decision in Ruffin, the Fourth circuit, in Watters v. Department of Social Services , supra , again concluded that state employees' claims for illnesses resulting from mold exposure in the workplace fell outside the scope of the LWCA.
This Court, in Mulder v. Jefferson Parish Hospital Service District #2 , 14-805 (La. App. 5 Cir. 3/25/15), 169 So.3d 606, also considered the nature of the work performed in determining whether the employee suffered an occupational disease within the meaning of the LWCA and concluded that she failed to show that her tendonitis was the result of the nature of the work performed as a rehabilitation nurse, even though part of her job included lifting patients. In Mulder , this Court *1015 discussed the importance of the nature of the work in making a determination as to whether the alleged illness constitutes an occupational disease and stated as follows:
The claimant in a workers' compensation action based on an occupational disease must establish by a preponderance of the evidence that there is a disability which is related to the employment-related disease. Vargas v. Daniell Battery Mfg. Co. , 93-1249 (La. App. 1 Cir. 5/20/94), 636 So.2d 1194, 1197. An occupational disease means only that the disease or illness is "due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease." La. R.S. 23:1031.1(B) ; see Coats v. American Tel. & Tel. Co. , 95-2670, p. 7 (La. 10/25/96), 681 So.2d 1243, 1247. The claimant must show that she contracted the disease during the course of her employment and that the disease was the result of the nature of the work performed. Vargas, supra .
Here, claimant was able to show only a possibility that her employment with East Jefferson contributed to her condition. Prior to the extension of workers' compensation coverage to include occupational disease, a worker's entitlement to compensation hinged on the occurrence of an "accident," which can only be established by the claimant's proof of an "identifiable precipitous event" that caused injury. While enlarging workers' compensation coverage to cases of occupational disease, La. R.S. 23:1031.1 retains the requirement that an employee establish that the disease arises from his work, i.e. , from "causes and conditions characteristic of and peculiar to the particular trade , occupation, process, or employment" in which the employee worked. Id. (Emphasis added ). The claimant must show that she was injured during the course of employment and that the injury was the result of the nature of her work performed. The causal link between a claimant's injury and her work-related duties must be established by a reasonable probability; the claimant here fails in her burden of proof upon a showing of only a possibility that the employment caused the injury or that other causes not related to the employment are just as likely to have caused the disease. Claimant here has failed to show that the alleged occupational disease was the result of the nature of the work performed.
Claimant cites no case where a rehabilitation nurse was granted workers' compensation benefits due to repetitive lifting of patients. Furthermore, claimant's medical expert notes his total lack of knowledge of any instance where a nurse's lifting patients constituted an occupational disease. See Picard v. Dynamic Offshore Contractors , 618 So.2d 1183 (La. App. 3 Cir. 1993) (court of appeal found that claimant, a structural fitter, failed to show tennis elbow as an occupational disease from his use of C-clamps where injury was not characteristic among others in his trade or occupation.).
Ms. Mulder was only able to show a possibility that her East Jefferson employment contributed to her condition. The "nature of the work" statutory requirement of occupational disease is not supported by the record of one unidentified nurse with tendonitis.
Mulder , 169 So.3d at 610-11
In Jackson v. Ware Youth Center , 41,830 (La. App. 2 Cir. 1/24/07), 948 So.2d 374, the Second Circuit also considered the employee's work-related duties in determining whether her medical problems could be characterized as an occupational disease *1016 within the meaning of the LWCA. In the Jackson case, the claimant, who worked as a security guard at the youth center, sought workers' compensation benefits, alleging that her medical problems were the result of her exposure to extreme cold at work. The workers' compensation judge found that the employee's medical problems did not meet the definition of an occupational disease and thereafter granted summary judgment in favor of the employer. In so ruling, the workers' compensation judge stated as follows:
In this case the claimant has contended she was diagnosed with intrastitial fibrosis and/or pneumonia. She also has noted for the record that she worked as a security officer. The court cannot find that pneumonia and/or intrastitial fibrosis is due to causes and conditions characteristic of or peculiar to being a security officer.
On appeal, the Second Circuit affirmed that judgment, agreeing with the workers' compensation judge that the employee's medical problems did not meet the definition of an occupational disease as set forth in La. R.S. 23:1031.1(B). Jackson , 948 So.2d at 375-76.
As evidenced by the foregoing discussion, appellate courts have regularly considered the employee's work-related duties in determining whether an illness constitutes an occupational disease within the meaning of the LWCA. On appeal, Mrs. Lyle insists that the analysis previously utilized by the courts, which focused on the employee's work-related duties, has been replaced with an analysis that focuses on causation. She specifically contends that the workers' compensation judge in this case committed legal error by relying on the two Fourth Circuit cases previously mentioned, Ruffin and Watters , which were implicitly overruled by the Louisiana Supreme Court in Arrant v. Graphic Packaging International, Inc. , supra . Ms. Lyle contends that under the Supreme Court's recent pronouncement in Arrant , causation is the central determinant of whether a particular claimant's illness is a compensable occupational disease, and that the workers' compensation judge erred in not reaching the issue of causation when ruling on Brock's motion for summary judgment.
In Arrant , the Louisiana Supreme Court was presented with the res nova issue of "whether gradual noise induced hearing loss caused by occupational exposure to hazardous noise levels is a personal injury by accident or an occupational disease, or both, under the Louisiana Workers' Compensation Act (hereinafter "LWCA"), thereby entitling the defendant employer to immunity from suits in tort under the exclusivity provisions of the LWCA." In Arrant , the plaintiff employees sought damages from their employer claiming that they suffered hearing losses as a result of their exposure to a hazardous level of noise during their employment at a paper mill, box plant, and carton plant. After considering the history and purpose of the LWCA, the Louisiana Supreme Court concluded that the noise-induced hearing loss fell squarely within the parameters of the LWCA, either as an accident or an occupational disease, and thus the employer was entitled to immunity from suits in tort under the LWCA. In finding that the plaintiffs' gradual noise-induced hearing loss was a result of their exposure to hazardous levels of noise in the course and scope of their employment and thus constituted an occupational disease within the meaning of the LWCA, the Louisiana Supreme Court stated as follows:
Furthermore, as the statute directs, we must look to whether plaintiffs' disease or illness "is due to causes and *1017 conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed." La.Rev.Stat. 23:1031.1(B). The legislature deliberately chose very broad and expansive words to determine whether a disease or illness is a compensable "occupational disease" under the Act. By definition, "[a]n occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease." La. R.S. 23:1031.1(B). In other words, an occupational disease is one in which there is a demonstrated causal link between the particular disease or illness and the occupation. See O'Regan, supra .
Viewed in this light, it is clear that NIHL meets the statutory definition of an "occupational disease" under the Act. The court of appeal correctly found that a causal link between plaintiffs' hearing losses and their work-related duties was established by a reasonable probability by the plaintiffs' own testimony and that of their experts. As the trial court found, and the record evidence supports, the "occupational disease" was contracted during the course of employment and was the result of the nature of the employment. There is no requirement in the statute, as the plaintiffs suggest, that the nature of the disease or injury be unique to the particular trade or industry. Here, hazardous levels of industrial noise, which caused the plaintiffs' hearing loss, was a condition very characteristic of and peculiar to the particular employment of working in a paper mill or box plant, which the evidence demonstrated involves machinery and processes producing high levels of industrial noise. Additionally, as the court of appeal noted, expert testimony in the form of certified reports, depositions or direct examination in open court supported a finding that the hearing loss was an occupational disease caused by exposure to high levels of industrial noise at the facility. Thus, the court of appeal correctly concluded the evidence established the plaintiffs' hearing loss "is due to causes and conditions characteristic of and peculiar to" plaintiffs' particular trade, occupation, process or employment with the defendants. Arrant v. Graphic Packaging Intern., Inc. , 48,197at pp. 11-12 (La. App. 2 Cir. 9/25/13), 127 So.3d 924, 931.
Arrant , 169 So.3d at 309-310
Mrs. Lyle suggests that Arrant heralded a broad view of the term "occupational disease" that hinges on a causal connection between one's employment environment and one's illnesses, and thus expands and thereby eviscerates the narrow duties-based approach to La. R.S. 23:1031.1 that was previously favored by the courts. We have thoroughly reviewed Arrant and can find no language that supports Mrs. Lyle's interpretation. While acknowledging that there is no requirement in the statute that the nature of the disease or injury be unique to the particular trade or industry, the Louisiana Supreme Court did not abolish the requirement of a causal link between the employee's illness and work-related duties.[3] As noted by this Court in *1018 Mulder , "[w]hile enlarging workers' compensation coverage to cases of occupational disease, La. R.S. 23:1031.1 retains the requirement that an employee establish that the disease arises from his work, i.e. , from 'causes and conditions characteristic of and peculiar to the particular trade , occupation, process, or employment' in which the employee worked." Mulder , 169 So.3d at 611. (emphasis in original)
Based on our review of the definition of "occupational disease" as set forth in the LWCA and the jurisprudence discussing that provision, including the Arrant case so heavily relied upon by Mrs. Lyle, as well as the evidence submitted at the hearing on the motion for summary judgment, we find no error in the ruling of the workers' compensation judge. We particularly note the deposition testimony of Mrs. Lyle's treating physician, Dr. Saketkoo, that sarcoidosis has nothing to do with a job classification. In her deposition, Dr. Saketkoo testified as follows:
Q. ... You understood that this woman had a very similar job to data processor; is that correct?
A. This is not about her job. It's not about what she did.
Q. Okay.
A. This is about the environment that she did her job in, okay.
Q. So the fact of what type of job she had or what her job classification was had nothing to do with her coming down with sarcoidosis ? It was the fact that where she was had this mold? Is that what you're saying?
A. High levels of mold, yeah ... And fungus.
Dr. Saketkoo further stated:
A. Well, again, I'm going to say this. It's not about the work she did. It's not about the fact that she worked in payroll. It's not about the fact that she was a typist. It's not about the fact that she dealt with data. It's about the thing that we all know is antigenic and the causation of sarcoid and the proliferation of sarcoid and causing it to do damage in the body and that's the culprit of fungus and mold that she was doing her job in, not to do with the fact that she was -- her fingers were hitting the keyboard.
Q. Have you ever had occasion to treat anybody else with sarcoidosis who did data entry or typing or accounting, stuff like that?
A. Oh, yeah. Yeah.
Q. And that would be because those people were likewise in an environment that had some of mold or what?
A. It could have been, you know, or it could have been we just don't know what the antigen for that person was because there was no clear evidence of exposure, you know, and sometimes we just don't look close to be quite honest.
Q. So the fact that there were doing the data entry or doing the typing or doing the accounting, that wasn't the trigger, if you will --
A. No.
Q. -- for them having sarcoidosis ?
A. Not, not by any stretch of my imagination.
In addition, Dr. Lutz similarly stated that sarcoidosis is not characteristic of and peculiar to the particular trade, occupation, *1019 or employment in which Mrs. Lyle was engaged.
Given this evidence, we conclude that there is no genuine issue of material fact that Mrs. Lyle's sarcoidosis did not arise from causes and conditions characteristic of and peculiar to her employment as a clerical worker, and therefore, her illness does not fit within the definition of occupational disease within the meaning of the LWCA. Given this determination, Brock is entitled to summary judgment as a matter of law.
CONCLUSION
Accordingly, for the reasons set forth herein, we affirm the judgment of the workers' compensation judge which granted Brock's motion for summary judgment and dismissed Mrs. Lyle's workers' compensation claim.
AFFIRMED

Brock retained the services of a mold testing company, which performed testing of the offices in October of 2015 and January of 2016.

In her brief, Mrs. Lyle asserts that a recent ruling by the Third Circuit in Duplechin v. St. Landry Parish School Board , 17-748 (La. App. 3 Cir. 2/7/18), 237 So.3d 1196, "has cemented the applicability of Arrant to cases in which a worker is seeking workers' compensation benefits due to employment-related sarcoidosis." We disagree. It appears that the Duplechin court focused on causation because that was the primary focus of the workers' compensation ruling. After referencing the Louisiana Supreme Court's explanation of an occupational disease in Arrant , the Duplechin court stated: "Notwithstanding any arguments regarding a link between the disease and the occupation that could exist in this case, the issue of causation of the claimant's alleged disability was the primary focus of the workers' compensation ruling." Id. at 1199.